1  JANIS L. TURNER (Cal Bar No. 079217)
   JANIS L TURNER ALC
2  2515 Camino Del Rio South Ste. 242B
   San Diego CA 92108
3  (619)718-4800 (voice)
   (619)718-4815 (fax)
4  jlt@janturnerlaw.com

5  Attorney for Plaintiff RICHARD A. CONNORS

6

7

8                UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF CALIFORNIA
9

10  RICHARD A. CONNORS, an individual  )    Case No 08 CV 1134 L  LSP
                                       )
11             Plaintiff               )    NOTICE OF MOTION FOR
                                       )    ISSUANCE OF TEMPORARY
12  vs.                                )    RESTRAINING ORDER
                                       )
13  HOME LOAN CORP. dba EXPANDED       )
    MORTGAGE CREDIT, a Texas Corp.     )
14  MORTGAGE ELECTRONIC                )    Date:   July 2, 2008
    REGISTRATION SYSTEMS (MERS) a      )    Time:   TBD
15  Delaware Corp., U.S. BANK NATIONAL )    Judge:  Honorable M. James Lorenz
    ASSOCIATION as trustee for CREDIT  )    Dept:   14
16  SUISSE FIRST BOSTON HEAT-2005-2    )
    AMERICA'S SERVICING COMPANY        )
17  CAL WESTERN RECONVEYANCE           )
    CORP., a California Corp.          )
18                                     )
               Defendants              )
19  _____)

20        Notice is hereby given that:

21        The undersigned attorney shall appear before the Honorable M. James Lorenz at the

22  Edward J. Schwartz United States Court House, 940 Front Street, San Diego, Department 14 at

23  for a hearing IF  the court shall deem appropriate or at _____ or as soon thereafter as she may

24  be heard to see a temporary restraining order and a hearing date for a preliminary order in the

25  above entitled case to restrain any and all actions relative to foreclosure of certain real property

26  located at 402 Paso del Norte and bearing Assessors parcel Number 187-500-21.

27

28

Notice Emergent Hearing RE Restraining Order 1

1   Said Motion/Application shall be based upon the requirements of FRCP 65 and that the

2   Plaintiff will suffer irreparable harm for which there is no legal remedy if said order does not

3   issue.

4   Plaintiff shall rely upon his declaration and appended exhibits, declaration of counsel and

5   appended exhibits, points and authorities, the contents of the courts file and such other or further

6   evidence as the court shall deem relevant.

7   Please note further that all relevant papers were filed via Electronic Case Filing (ECF) on

8   or before July 2, 2008.

9

10  Dated: July 2, 2008                          JANIS L. TURNER ALC

11

12                                               By_____/s/_____
13                                               Janis L. Turner Esq. Counsel for
                                                 Plaintiff RICHARD A. CONNORS
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice Emergent Hearing RE Restraining Order 2

1 | JANIS L. TURNER (Cal Bar No. 079217)
JANIS L TURNER ALC
2 | 2515 Camino Del Rio South Ste. 242B
San Diego CA 92108
3 | (619)718-4800 (voice)
(619)718-4815 (fax)
4 | jlt@janturnerlaw.com

5 | Attorney for Plaintiff RICHARD A. CONNOR*S*

6

7

8 | UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
9

10 | RICHARD A. CONNORS, an individual ) | Case No 08 CV 1134 L LSP
                                      )
11 |              Plaintiff           ) | DECLARATION OF PLAINTIFF
                                      ) | RICHARD CONNORS SUPPORTING
12 | v.                               ) | TEMPORARY RESTRAINING ORDER
                                      )
13 |                                  )
HOME LOAN CORP. dba EXPANDED          )
14 | MORTGAGE CREDIT, a Texas Corp.    )
MORTGAGE ELECTRONIC                   )
15 | REGISTRATION SYSTEMS (MERS) a     ) | Date:    July 2, 2008
Delaware Corp., U.S. BANK NATIONAL    ) | Time:    10 AM
16 | ASSOCIATION as trustee for CREDIT ) | Judge:   Honorable M. James Lorenz
SUISSE FIRST BOSTON HEAT-2005-2       ) | Dept:    14
17 | AMERICA'S SERVICING COMPANY        )
CAL WESTERN RECONVEYANCE              )
18 | CORP., a California Corp.          )
                                      )
19 |             Defendants           )
                                      )
20 | _____)

21 |        RICHARD CONNORS of full age upon his oath and under penalty of perjury deposes

and says:

22 | 1.    I am the Plaintiff in the above entitled matter. I make this declaration under penalty of

23 |       perjury and as to facts within my own personal knowledge and as to matters to which I

24 |       could competently testify were I called upon to do so.

25 | 2.    On about November 7, 2003, I purchased certain real property commonly known as 402

26 |       Paso del Norte, Escondido, County of San Diego, State of California. That property is

27 |       more fully described in the Grant Deed appended to the complaint in this matter.

28

Dec of CONNORS Temp Restraining Order      1

3.  That property is my home and since I am self employed as a computer consultant it is also the place from which I do much of my work.

4.  The house was purchased to be my home. It was not purchased as some form of investment property with the intention of turning it over and making a profit as quickly as possible.

5.  On November 19, 2004, as interest rates dropped, I decided to refinance the property with a loan through Defendant HOME LOAN CREDIT by means of an Adjustable Rate Promissory Note appended hereto and incorporated by reference.

6.  The refinance was through a loan broker called EXPANDED MORTGAGE CREDIT. I did not at that time know that they were a Texas Corporation actually called HOME LOAN CORPORATION, the local broker was named AtVantage now out of business.

7.  I told the people with whom I talked that I was self employed which meant that there are times when there are cash flow issues.

8.  The loan was an Adjustable Rate Note. The Adjustable Rate Note was based upon the LIBOR six-month adjustable rate, fixed for two years then it could adjust, but I could refinance.

9.  While I understood the fact that the Mortgage was adjustable, I did not understand the workings of the LIBOR calculations. I certainly did not understand that LIBOR stands for London Interbank Offered Rate and is in fact most commonly reported in its three month and 1 year rates. I further did not understand that the rate is so volatile that it can and has doubled over a period of one month.

10. I further did not understand that those placing the Mortgage were paid far higher and unlawful as well as not reported commissions to convince me to agree to this "sub-prime loan" when in fact I qualified for but was persuaded that with this low rate I could refinance it again before the two years expired and get into a fixed rate at that time.

11. In late 2007, I was experiencing cash flow problems in my business and I fell behind on my mortgage and in March I received a default notice.

Dec of CONNORS Temp Restraining Order    2

12. I thereafter first contacted AMERICA'S SERVICING CO to whom I had always sent my loan payments to determine who actually "owned" what was purported to be my mortgage. (Exhibit **B** ) so that I could work directly with the note owner so that the owner would get the same amount of money originally owed but under a different payment schedule. AMERICA'S SERVICING CO ignored and blocked my efforts to contact the note owner at every turn, and I became suspicious of the whole situation. (Exhibit B)

13. In fact I sent them four separate letters. I never received any real reply to my requests for information. All I received was a form which answered no questions at all.

14. I also sent four separate letters to CAL WESTERN demanding validation of the loan and information as to who was U.S. BANK NATIONAL ASSOCIATION as trustee for CREDIT SUISSE FIRST BOSTON HEAT-2005-2 along with another letter requesting to view and inspect the promissary note since as far as I knew and still know they have nothing to do with my mortgage.

15. To date, despite my legal right to such validation of the debt, I have received nothing from CAL WESTERN.

16. Since I am not a lawyer, when I attempted to do what I perceived to be required I may well have used forms which were archaic, but the Fair Debt Collection Practices Act either in its Federal or California form does not mandate any specific forms for use.

17. I thereafter began to investigate my rights including my right to determine who actually possess the mortgage and the original signed documents from that mortgage since I had no way to be sure that those people listed on the Default Notice were the bona fide owners of the mortgage or had complied with the formalities required for a lawful mortgage transfer.

18. I further investigated information from the Federal Reserve concerning extensions of credit by the Federal Reserve and what appears to have happened here. I have come to the conclusion that the loan here is no longer a mortgage but is now a security as that term is used by the Securities and Exchange Commission as well as in the California Corporations Code.

Dec of CONNORS Temp Restraining Order     3

19. I further have come to the conclusion that this transfer of funds ceased to be a mortgage and as such was not protected by the exception to the California Usury Rules found in the California Constitution.

20. As such, I first filed the within motion in the State Court action seeking among other things a judicial determination as to the nature of the finances involved here and hence the appropriate interest rate and amounts owed. I came to realize that I was in way over my head and began to seek a lawyer. Several of them were concerned with the short period of time left and I admit I should not have left it so long, still, this concerns my home and this was very complex.

21. Further I sent out the right things and have not received what was required to be sent under the Fair Debt Collection Practices Act so at minimum I can clearly succeed on that cause of action. I believe I will prevail on the other critical causes of action as well.

22. The determination will affect all rights and remedies including whether or not there is an actual right existing here to execute a non-judicial foreclosure which is solely a creature of statute.

23. I have further filed the within action since a careful reading of the actual documents involved here shows the Defendant HOME LOAN was named as trustee while MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) was named as beneficiary.

24. Before the Defendants should be allowed to take away my home, it is my belief that they ought to at minimum be required to produce the requisite documents to demonstrate an actual right to do so.

25. I remind the court that this is my home we are talking about. It is by definition unique and something for which mere damages can never fully compensate me and thus, I have no adequate remedy at law and am thus entitled to equitable relief.

///

///

Dec of CONNORS Temp Restraining Order     4

26. At present the non-judicial foreclosure sale of my home is set for July 3, 2008, and given the drastic nature of what can happen not only to me but to the individual who owns the second trust deed who can loose the money he invested.

27. Given the current status of the real estate market it does not appear that a delay will do any real harm to any of the Defendants and given the serious nature of what has occurred to me as well as to numerous other people I submit this is a very serious issue which requires a judicial determination not only in my interest but for many others who may be in the same position as I.

28. It is further essential that the position of the parties and their interests remain in the status quo until the court can reach a decision.

29. I therefore request that the court issue a temporary restraining order and set this matter for a hearing as to the issuance of a preliminary injunction to hold everything in place until a decision is reached.

Executed under penalty of perjury this 30th Day of June 2008 at Escondido, County of San Diego, State of California under the laws of the State of California

RICHARD A. CONNORS

EXHIBIT A TO CONNORS DECLARATION

## ADJUSTABLE RATE NOTE

MIN: 100056400740400489

(LIBOR Six-Month Index (As Published In The Wall Street Journal)—Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

November 19, 2004                        ESCONDIDO                        CALIFORNIA
                                          [City]                           [State]
                                    402 PASEO DEL NORTE
                                ESCONDIDO, CALIFORNIA  92026
                                     [Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 500,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is HOME LOAN CORPORATION DBA EXPANDED MORTGAGE CREDIT. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.750 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.  PAYMENTS

(A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **January 1, 2005**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on December 1, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2350 NORTH BELT EAST STE 850, HOUSTON, TEXAS 77032, or at a different place if required by the Note Holder.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna

Form 3520  1/01    *(Page 1 of 5 Pages)*

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| **B4** | 1 | 9 |

INITIALS: _____  _____

(B)  Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 2,917.86.  This amount may change.

(C)  Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A)  Change Dates

The interest rate I will pay may change on the first day of December, 2006, and on that day every 6th month thereafter.  Each date on which my interest rate could change is called a "Change Date."

(B)  The Index

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

(C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding FOUR and THREE/FOURTHS percentage points ( 4.750 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

(D)  Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 8.7500 % or less than 5.7500 %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE and ONE/HALF percentage points (1.50 %) from the rate of interest I have been paying for the preceding 6 months.  My interest rate will never be greater than 12.7500 % or less than 5.7500 %.

(E)  Effective Date of Changes

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)  Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                                    Form 3520  1/01    (Page 2 of 5 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B4 | 2 | 9 |

INITIALS: _____  _____

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note. If I make a full prepayment or a partial prepayment, I will pay the prepayment charges set forth below.

I may prepay all or any part of the unpaid balance of the principal at any time. If, however, I prepay any amount during the first 2 years of this Note, Lender may, at its option and as permitted by law, assess a prepayment penalty of 6 months' interest at the loan rate on the amount by which the aggregate of principal payments for a 12-month period exceeds 20.00% of the unpaid balance of the loan.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

By accepting partial payment of any payment, Note Holder does not waive the right to collect the remainder of such payment. Acceptance of any payment after maturity, or waiver of any breach or default of the terms of this Note shall not constitute a waiver of any later or other breach or default, and failure of Note Holder to exercise any of its rights shall not constitute waiver of such rights.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Acceleration

If I am in default, the Note Holder may without notice or demand, unless otherwise required by applicable law, require me to pay immediately the full amount of Principal that has not been paid and all interest that I owe on that amount.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                                  Form 3520  1/01   (Page 3 of 5 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B4 | 3 | 9 |

INITIALS: _____

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of notice of acceleration, Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna

Form 3520  1/01   (Page 4 of 5 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B4 | 4 | 9 |

INITIALS: _____  _____

Loan No: 7404-0008                                                      Data ID: 178

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

....................................................................................[Seal]
RICHARD A. CONNORS —Borrower

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3520  1/01     *(Page 5 of 5 Pages)*

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| **B4** | 5 | **9** |

Loan No:  7494-0048                                    Data ID:  178
Borrower:  RICHARD A. CONNORS

# ADJUSTABLE RATE RIDER

### (LIBOR Six-Month Index (As Published In The Wall Street Journal)—Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 19th day of November, 2004, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to HOME LOAN CORPORATION DBA EXPANDED MORTGAGE CREDIT ("Lender") of the same date and covering the property described in the Security Instrument and located at:

402 PASEO DEL NORTE
ESCONDIDO, CALIFORNIA  92026
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT.   THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 5.750 %.  The Note provides for changes in the interest rate and the monthly payments, as follows:

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of December, 2006, and on that day every 6th month thereafter.  Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding FOUR and THREE/FOURTHS percentage points ( 4.750 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                              Form 3138  1/01    (Page 1 of 2 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B4 | 6 | 9 |

Loan No: 7404-0048                                      Data ID: 178

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 8.7500 % or less than 5.7500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE and ONE/HALF percentage points (1.50 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 12.7500 % or less than 5.7500 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

...........................................................................(Seal)
RICHARD A. CONNORS —Borrower

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3138  1/01    (Page 2 of 2 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B4 | 7 | 9 |

Loan No: 7404-0048                                                      Data ID: 178
Borrower: RICHARD A. CONNORS

## LEGAL DESCRIPTION

Provide legal description here. Attach to the document to be recorded and file as one instrument.

*(Page 1 of 1 Pages)*

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| **B4**  | 8    | **9** |

EXHIBIT "A"

That portion of the Northwest quarter of the Northeast quarter of Section 33, Township 11 South, Range 2 West, San Bernardino Base and Meridian, in the City of San Diego, County of San Diego, State of California, according to the United States Government Survey approved January 26, 1891, according to Official Plat thereof, described as follows:

Beginning at the Southwest corner of said Northwest quarter of the Northeast quarter of said Section 33, thence East 417 feet, measured along the South line of said Northwest quarter of the Northeast quarter, thence North 417 feet along a line parallel with the West line of said Northwest quarter of the Northeast quarter; thence West 417 feet along a line parallel with the South line of said Northwest quarter of the Northeast quarter to a point in the West line thereof; Township South along said West line, 417 feet to the point of beginning.

Except therefrom that portion lying Easterly of the Westerly line of the County Road as set forth in Surveys on file in the Office of the County Recorder of San Diego County, California.

Also except therefrom the North 100 feet.

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B4 | 9 | 9 |

Return to:
HOME LOAN CORP
ATTENTION: POST CLOSE
2350 NORTH BELT EAST STE 850
HOUSTON, TX 77032

———————————————— [Space Above This Line For Recording Data] ————————————————

Loan No: 7404-0048                                                  Data ID: 178
Borrower:  RICHARD A. CONNORS

# DEED OF TRUST    MIN: 100056400740400489

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document
are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated November 19, 2004, together with all
Riders to this document.

(B) "Borrower" is RICHARD A. CONNORS , AN UNMARRIED MAN    . Borrower is the trustor
under this Security Instrument.

(C) "Lender" is HOME LOAN CORPORATION DBA EXPANDED MORTGAGE CREDIT. Lender
is A CORPORATION organized and existing under the laws of the State of TEXAS. Lender's address
is 2350 NORTH BELT EAST STE 850          HOUSTON, TX 77032.

(D) "Trustee" is HOME LOAN CORPORATION DBA EXPANDED MORTGAGE CREDIT.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that
is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has
an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna          Form 3005   1/01      (Page 1 of 16 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3      | 1    | 16  |

Loan No: 7494-0048                                             Data ID: 178

(F) "Note" means the promissory note signed by Borrower and dated November 19, 2004. The Note states that Borrower owes Lender FIVE HUNDRED THOUSAND and NO/100-----Dollars (U.S. $ 500,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than December 1, 2034.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider      ☐ Condominium Rider                   ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider
☐ 1-4 Family Rider           ☐ Biweekly Payment Rider
☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                Form 3005   1/01·        (Page 2 of 16 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3 | 2 | 16 |

Loan No: 7404-0048                                                        Data ID: 178

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of ESCONDIDO:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of 402 PASEO DEL NORTE,
                                                        [Street]

ESCONDIDO, CALIFORNIA                            92026          ("Property Address"):
[City]                                          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3005   1/01        (Page 3 of 16 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| 83      | 3    | 16  |

Loan No: 7404-0048

Data ID: 178

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                        Form 3005    1/01      (Page 4 of 16 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| 83 | 4 | 16 |

Loan No: 5404-0648                                              Data ID: 178

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna              Form 3005    1.01     (Page 5 of 16 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3 | 5 | 16 |

Loan No: 7404-0048                                                                                    Data ID: 178

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3 | 6 | 16 |

Loan No: 7464-0048                                              Data ID: 178

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| 83 | 7 | 16 |

Loan No: 7494-0048                                                                Data ID: 178

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3005    1/01        (Page 8 of 16 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3 | 8 | 16 |

Loan No: 7404-0048                                                    Data ID: 178

10.  **Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                Form 3005   1/01        (Page 9 of 16 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B 3 | 9 | 16 |

Loan No: 7404-0048                                                                 Data ID: 178

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3005    1 01        (Page 10 of 16 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3 | 10 | 16 |

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3005   1/01        (Page 11 of 16 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|----|
| B3      | 11   | 16 |

Loan No: 7404-0048

Data ID: 178

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3 | 12 | 16 |

Loan No: 7464-0048                                    Data ID: 178

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna              Form 3005   1.01      (Page 13 of 16 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3 | 13 | 16 |

Loan No: 7404-9048                                                Data ID: 178

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Following Borrower's breach of any covenant or agreement in this Security Instrument, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3 | 14 | 16 |

Loan No: 7404-0048   Data ID: 178

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3005   1/01      (Page 15 of 16 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3 | 15 | 16 |

Loan No: 7404-0048                                                    Data ID: 178

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

.............................................................................(Seal)
RICHARD A. CONNORS —Borrower

——————————————————— [Space Below This Line For Acknowledgment] ————————————————

State of  CALIFORNIA                                 §
County of  SAN DIEGO                                 §

On _____, 20____, before me, _____, a Notary Public,
personally appeared
RICHARD A. CONNORS
☐ personally known to me
OR
☐ proved to me on the basis of satisfactory evidence

to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
                                                     Notary Public

[Seal]

_____
My commission expires:_____          (Printed Name)

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna            Form 3005    1/01        (Page 16 of 16 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|----|
| B 3     | 16   | 16 |

EXHIBIT B TO CONNORS DECLARATION

CERTIFIED MAIL #    7 0220 0000 6009 8751

REQUEST FOR VALIDATION AND INFORMATION TO VALIDATE ALLEGED
DEBT

NOTICE OF FAIR DEBT COLLECTION PRACTICES ACT
CALIFORNIA CIVIL CODE SECTION 1788-1788.3

January 12, 2008

RICHARD A. CONNORS
c/o Daniel-Mark: Gough, Notary Public
Oceanside, California State
united States of America

America's Servicing Company
PO BOX 10388
DES MOINES, IA  50306-0388
(866) 430-0675 Customer Service


REQUEST FOR VALIDATION AND VERIFICATION OF ALLEGED DEBT

In Re:  106 Loan Number:  1205113359
        Original Loan No: 7404-0048
        Borrower: RICHARD A. CONNORS, AN UNMARRIED MAN

Dear America's Servicing Company ,

Greetings,

It has come to my attention that the alleged mortgage DEBT, related to "106 Loan
Number:  1205113359" and allegedly serviced by your company, may not be valid.
Therefore, I hereby demand verification of the alleged DEBT based on your notice dated
December 17, 2007.

1.  Please obtain and provide, under affidavit, the name and address of the original
    creditor.

2.  Please obtain and provide, under affidavit, the name and address of the current
    creditor.

3.  Please obtain and provide, under affidavit, the name and address of the actual note
    holder of the original promissory note and deed of trust to confirm the legal status
    and standing of the holder of the original promissory note.

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| C5 | 2 | 3 |

CERTIFIED MAIL #     *J 0220 0000 6009 8751*

Your office must provide this information in writing with particularity and specificity. Your must send this information to the following, and no other, party and location:

RICHARD A. CONNORS
c/o Daniel-Mark: Gough, Notary Public
Oceanside, California State
united States of America

If you do not or are not able to provide the above information by the date of January 28th, 2008, you and I agree there is no valid debt owed to you or anyone else.

Thank you.

Sincerely,

By: Richard-Arthur: Connors, Authorized Representative
All rights expressly reserved

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| C5 | 3 | 3 |

1  JANIS L. TURNER (Cal Bar No. 079217)
   JANIS L TURNER ALC
2  2515 Camino Del Rio South Ste. 242B
   San Diego CA 92108
3  (619)718-4800 (voice)
   (619)718-4815 (fax)
4  jlt@janturnerlaw.com

5  Attorney for Plaintiff RICHARD A. CONNOR*S*

6

7

8                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF CALIFORNIA
9

10  RICHARD A. CONNORS, an individual    )    Case No 08 CV 1134 L LSP
                                         )
11              Plaintiff                )    POINTS & AUTHORITIES IN
                                         )    SUPPORT OF MOTION FOR
12  vs.                                  )    TEMPORARY RESTRAINING ORDER
                                         )
13  HOME LOAN CORP. dba EXPANDED         )
    MORTGAGE CREDIT, a Texas Corp.       )
14  MORTGAGE ELECTRONIC                  )    Date:   July 2, 2008
    REGISTRATION SYSTEMS (MERS) a        )    Time:   10 AM
15  Delaware Corp., U.S. BANK NATIONAL   )    Judge:  Honorable M. James Lorenz
    ASSOCIATION as trustee for CREDIT    )    Dept:   14
16  SUISSE FIRST BOSTON HEAT-2005-2      )
    AMERICA'S SERVICING COMPANY          )
17  CAL WESTERN RECONVEYANCE             )
    CORP., a California Corp.            )
18                                       )
                Defendants               )
19  _____ )

20                        **INTRODUCTION**

21       Factually the underlying case in issue here concerns  real property commonly known as

22  402 Paso del Norte[1], Escondido, California. That property was purchased by Plaintiff RICHARD

23  CONNORS in November 2003 not to be an investment but to be Mr CONNORS' home and

24  since he is self employed as a computer consultant it is also the place from which he works.

25

26

27

28       [1] Please note that by inadvertence the street name was spelled "Paseo" del Norte in the
    complaint
    P&A in Support for Temp Restraining Order    1

In November  2004, as interest rates had dropped and, as one who was self employed, Plaintiff needed to reduce  monthly capital out flow, he  refinanced the property with a loan through Defendant HOME LOAN CREDIT by means of an Adjustable Rate Promissory Note.

The refinance was through a loan broker called EXPANDED MORTGAGE CREDIT. He did not at that time know that they were a Texas Corporation actually called HOME LOAN CORPORATION.

In late 2007, Plaintiff  was experiencing cash flow problems in his business and  fell behind on his mortgage and in March 2008, he received a default notice. He first contacted AMERICA'S SERVICING CO to whom the Mortgage payments had always been sent.

In fact he sent them letters more than once, and never received any real reply to his requests to find out who owned the loan and what was happening. He also sent letters to CAL WESTERN demanding validation of the loan and information as to who was U.S. BANK NATIONAL as trustee for CREDIT SUISSE FIRST BOSTON HEAT-2005-2 since as far as he knew and still knows they have nothing to do with the mortgage. It is not known how or for that matter if U. S. BANK actually has any significant rights or sufficient rights to initiate a non-judicial foreclosure.

To date, despite the legal right to such validation of the debt Plaintiff has received nothing in substantive response to his legally sanctioned request for validation from CAL WESTERN.

CONNORS has received a notice of Foreclosure sale at a non-judicial foreclosure sale set for July 3, 2008.

## PROCEDURAL HISTORY

Procedurally Plaintiff first filed an action in the Superior Court for the State of California. He did not understand how service needed to be done so it was never served. Thereafter, realizing the complexity of what was happening he retained counsel who as quickly as she could read the documents, dismissed the State Court case without prejudice and filed the within action.

///

///

P&A in Support for Temp Restraining Order     2

It was filed on June 24, 2008. A letter was sent to counsel for CAL WESTERN on June 26 to see if a voluntary continuance of the sale could be arranged. At the same time counsel reserved a date for a hearing and counsel informed the court that if there was an arrangement reached the hearing would be taken off calendar.

## LEGAL ARGUMENT

The general rule is that a Temporary Restraining Order or a preliminary injunction is for the purpose of preserving the status quo, that is the condition at the time of filing, until there can be an adjudication on the merits.

As what appears to be the essential case on the issue, but Supreme Court has held "the sole purpose [of the TRO] is to preserve the status quo pending hearing on the moving party's application for a preliminary injunction". *Granny Goose Foods v. Brotherhood of Teamsters et al* 415 US 423, 439, 94S.Ct. 113 (1974).

Thus the only action sought here is the issuance of the TRO together with the setting of the date and any necessary briefing schedule for the issuance of a Preliminary Injunction.

## NOTICE

Unlike a request for a TRO, an application or motion for a Preliminary Injunction requires notice to the opposing party or parties. The rules are clear that a TRO can issue *ex parte* that is without notice.

As can be seen from the appended attorney declaration and certificate, counsel for moving party here served notice of an emergent hearing or at least attempted to do so at the same time as the complaint was served.

## JURISDICTION

## SUBJECT MATTER

The first step in obtaining injunctive relief of any sort is that the moving party must demonstrate that the court has subject matter jurisdiction. It must be kept in mind that the basic rule concerning Federal Court jurisdiction is that, unlike the state courts which are presumed to be courts of general jurisdiction, the jurisdiction of this court is circumcised and must be affirmatively pled.

P&A in Support for Temp Restraining Order     3

Here, as can be seen from the complaint which has already been filed, the Federal Court jurisdiction is predicated upon federal questions arising out of sections of the United States Code. These include, violation of various federal codes thus giving this court jurisdiction.  Thus for purposes of a TRO sufficient jurisdiction has been pled.

In addition, Plaintiff will shortly be filing a first amended complaint alleging violation of the Fair Debt Collection Practices Act both in its federal and state forms.

## PERSONAL JURISDICTION

A second test concerning issuance of a TRO is a demonstration of personal jurisdiction over the parties.  As can be seen from the complaint, it is clear that personal jurisdiction over each of the defendants does indeed exist.

## STANDING

The requirement of standing is what prevents someone from bringing action based upon someone else's rights. One must show direct and concrete or eminent injury to oneself. *Lujan* v. *Defenders of Wildlife* 504 US 555, 560, 112 S.Ct 2130 (1992).

## EQUITABLE JURISDICTION

Not only must the other jurisdictional requirements he met but the court must have equitable jurisdiction.

While courts of equity (Chancery) were once separate, the joinder of both functions unless the Congress has specifically excluded such equitable jurisdiction is implied.

"Absent the clearest command to the contrary from Congress, Federal Courts retain equitable power to issue injunctions over any suit over which they have jurisdiction."*Calafano v. Yamasaki* 442 US 682, 705, 99 S.Ct 2545 (1979).  See also *US v Oakland Cannabis Buyers Coop* 532 US. 483, 495, 112 S.Ct 1711 (2001).

Here, there is no question that this court has jurisdiction to grant the relief requested.  The only issue is whether the court in its discretion deems the relief appropriate.

///

///

///

P&A in Support for Temp Restraining Order     4

**REQUIREMENTS**

The initial requirement for the issuance of a TRO is that the moving party must demonstrate what the courts have always labeled the fundamental requirements that he is irreparable injury and the inadequacy of legal remedy. See *Weinberger v Romero-Barcedo* 456 US 305, 312, 102 S.Ct 1978 (1982).

Here, the item in question is real property in fact the Plaintiffs home. This is one of those items which by definition is configured unique and something for which no amount of monetary damages will compensate. In short, by definition Plaintiff will suffer irreparable harm in the loss of his home and that loss will be something which he cannot be compensated for, the essence of the requirements in equity.

**BALANCING**

Under most rulings, the court is also obligated to balance the competing claims of the parties and the effect on each of them of the issuance of injunctive relief as against the harm of not issuing the injunction. In addition, it appears the Judge should give at least some weight to any public interest which might be involved. See *Dogloo v. Doshocil Manufacturing Industries* 875 F. Supp. 911, 919 (CD Ca 1995).

Generally stated the rule is that there must be a substantial threat of irreparable harm to the Plaintiff, that injury must outweigh any potential harm to Defendants and there is no substantial risk to public interest.

Here, what the Plaintiff stands to lose is his home not just the most important investment any person ever makes but the place where one has chosen to make his life, to build his future, a place which by definition the law has ruled not replaceable by mere money.

As to the Defendants here, issuing a Temporary Restraining Order, particularly given the current real estate market will do them essentially no damage at all. In fact it is extraordinarily common that foreclosure sales are postponed without court intervention, something for which as can be seen in the appended declaration of counsel was attempted here. It must be noted, that the Plaintiff has justifiably asked for a demonstration of the right to actually legally hold the foreclosure.

P&A in Support for Temp Restraining Order    5

1    It is not excessive to restrain the occurrence of that event until there is actually proof that the
2    Defendants have the right to the relief they seek, a relief which is not reviewed by any court and
3    is extremely harsh.
4        As to public interest as far as can be seen, there actually is none in one way or the other at
5    least not at this point.

6                              **LIKELIHOOD OF SUCCESS**

7        The final prong of the test for issuance of the release sought here is what has been labeled
8    likelihood of success.  This is a difficult term to encompass since one must note from the outset
9    that it is likelihood of success as viewed from the perspective of the time at which the request is
10   filed and the courts have long held that certainty is not required..

11       Plaintiffs are not required to show positively that they will prevail on the merits.  A
12   reasonable probability is sufficient See *Glider v PGA Tour Inc*. 936 F. 2nd 417, 422 (9 Cir 1991).

13       Various courts have used various tests for this rule that The Ninth Circuit however has set
14   forth a test which is formulated in the alternative.  That is a Plaintiff may meet his burden by
15   showing "either a combination of probable success on the merits and the possibility of
16   irreparable injury; or serious questions as to these matters and the balance of hardships tips
17   sharply in the Plaintiffs favor" *Department of Parks & Rec for the State of California v. Bazaar*
18   *Del Mundo Inc.* 448 F. 3rd 1118,1123 (9h Cir 2006).

19       The court continued to note that the two "formulations represent two points on a sliding
20   scale in which the required degree of irreparable harm increases as the probability of success
21   decreases"id at pg 1123-1124.

22       The Circuit Court, has also noted that where there are "serious questions" that is
23   questions that involve a fair chance of success on the merits that cannot be resolved by the one
24   way or the other at the hearing on the injunction "and they as to which the court perceives the
25   need to preserve the status quo lest one side prevent resolution of the question or execution of
26   any judgment by altering the status quo" *Republic of the Philippines v Marcos* 862 F. 2nd 1355,
27   1362 (9 Cir 1988).

28

P&A in Support for Temp Restraining Order     6

In this case, the issue was whether the Defendant a former President of the Philippines would make it impossible for the Republic to recover its treasury.

Here, the Plaintiff has demonstrated the existence of that reasonable likelihood of success with regard to very serious questions. Unlike the case decided by Judge Whelan a little over a month ago, *Lyndon v. Countrywide Home Loans* (Docket number 08 - CV-0837) May 13, 2008 the Plaintiff here has both filed suit and sought relief prior to the occurrence of the sale.

Admittedly, it was very shortly before the foreclosure sale but the declaration of the Plaintiff demonstrates clearly that he had been actively attempting to obtain information so as to determine whether the sale was lawful.

These efforts, would clearly show a demonstration of violation of both the Federal and State Fair Debt Collection Practices Act.

However, even absent the allegations which are to be added to an amended complaint it is submitted what Plaintiff has submitted is both sufficient and has demonstrated a sufficient likelihood of success when given the extraordinarily serious event which will take place if the TRO does not issue to justify the court entering the order and setting the matter for a hearing for preliminary injunction within an appropriate time frame.

## CONCLUSION

For all of these reasons it is respectfully requested the Plaintiffs request be granted and that a temporary restraining order issue restraining all Defendants from taking any action negatively affecting Plaintiffs rights to the property.

Dated: June 30, 2008                                    JANIS L. TURNER ALC


By_____/s/_____
Janis L. Turner Esq. Counsel for
Plaintiff RICHARD A. CONNORS

P&A in Support for Temp Restraining Order     7

JANIS L. TURNER (Cal Bar No. 079217)
JANIS L TURNER ALC
2515 Camino Del Rio South Ste. 242B
San Diego CA 92108
(619)718-4800 (voice)
(619)718-4815 (fax)
jlt@janturnerlaw.com

Attorney for Plaintiff RICHARD A. CONNOR*S*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD A. CONNORS, an individual ) <br><br> Plaintiff ) <br><br> vs. ) <br><br> HOME LOAN CORP. dba EXPANDED MORTGAGE CREDIT, a Texas Corp. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) a Delaware Corp., U.S. BANK NATIONAL ASSOCIATION as trustee for CREDIT SUISSE FIRST BOSTON HEAT-2005-2 AMERICA'S SERVICING COMPANY CAL WESTERN RECONVEYANCE CORP., a California Corp. ) <br><br> Defendants ) | Case No 08 CV 1134 L LSP <br><br> SUPPLEMENTAL POINTS IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER <br><br> Date:    July 2, 2008 <br> Time:    10 AM <br> Judge:   Honorable M. James Lorenz <br> Dept:    14 |

## INTRODUCTION

Plaintiff herewith submits the within supplemental points and authorities and renews his motion for issuance of a TRO to restrain the foreclosure sale of the Plaintiffs home located at commonly known as 402 Paso del Norte[1], Escondido, California.

It should be noted that Plaintiff at this point only seeks relief against CAL-WESTERN as an agent to be restrained and does not aver that it has any monetary interest in the matter.

---

[1] Please note that by inadvertence the street name was spelled "Paseo" del Norte in the complaint

P&A in Support for Temp Restraining Order    1

Plaintiff will shortly be requesting leave to amend his complaint and will among other things deal with that issue either in the new complaint or via stipulation.

All Plaintiff is seeking here is a TRO so that Plaintiff's home will not be sold and all parties can be before this court.

.

## LEGAL ARGUMENT

The general rule is that a Temporary Restraining Order or a preliminary injunction is for the purpose of preserving the status quo, that is the condition at the time of filing, until there can be an adjudication on the merits.

As what appears to be the essential case on the issue, but Supreme Court has held "the sole purpose [of the TRO] is to preserve the status quo pending hearing on the moving party's application for a preliminary injunction". *Granny Goose Foods v. Brotherhood of Teamsters et al* 415 US 423, 439, 94S.Ct. 113 (1974).

Thus the only action sought here is the issuance of the TRO together with the setting of the date and any necessary briefing schedule for the issuance of a Preliminary Injunction.

## NOTICE

Unlike a request for a TRO, an application or motion for a Preliminary Injunction requires notice to the opposing party or parties. The rules are clear that a TRO can issue *ex parte* that is without notice.

As can be seen from the appended attorney declaration and certificate, counsel for moving party here served notice of an emergent hearing or at least attempted to do so at the same time as the complaint was served. Counsel's attorney service duly served both the complaint and notice that Counsel would be appearing ex parte seeking a TRO and that all papers for that TRO would be available via ECF no later than Monday June 30, 2008. Since the parties here are corporate entities who must be served via their registered agents of service of process it is submitted that Plaintiff has either given notice of has met the standards for relief without notice.

1

## JURISDICTION

2

## SUBJECT MATTER

3       The first step in obtaining injunctive relief of any sort is that the moving party must

4  demonstrate that the court has subject matter jurisdiction.  It must be kept in mind that the basic

5  rule concerning Federal Court jurisdiction is that, unlike the state courts which are presumed to

6  be courts of general jurisdiction, the jurisdiction of this court is circumcised and must be

7  affirmatively pled.

8       Here, as can be seen from the complaint which has already been filed, the Federal Court

9  jurisdiction is predicated upon federal questions arising out of sections of the United States Code.

10  These include, violation of various federal codes thus giving this court jurisdiction.  Thus for

11  purposes of a TRO sufficient jurisdiction has been pled. The Complaint alleges various federal

12  statutes including The Real Estate Settlement Procedures Act (RESPA)

13       The court has asked specifically under what section Plaintiff seeks relief Plaintiff

14  respectfully responds that 12 USCA § 2605 provides the basis for relief and is supported by the

15  preceding documents which are incorporated by reference. That is Mr Connors has stated in his

16  declarations that he has never received any notice as to who US BANK as Trustee or the

17  CREDIT SUISSE FIRST BOSTON HEAT are.

18       .

19

## REQUIREMENTS

20       The initial requirement for the issuance of a TRO is that the moving party must

21  demonstrate what the courts have always labeled the fundamental requirements that he is

22  irreparable injury and the inadequacy of legal remedy.  See *Weinberger v Romero-Barcedo* 456

23  US 305, 312, 102 S.Ct 1978 (1982).

24       Here, the item in question is real property in fact the Plaintiffs home.  This is one of those

25  items which by definition is configured unique and something for which no amount of monetary

26  damages will compensate.  In short, by definition Plaintiff will suffer irreparable harm in the loss

27  of his home and that loss will be something which he cannot be compensated for, the essence

28  of the requirements in equity and the court seems to agree that this prong of the test together with

P&A in Support for Temp Restraining Order     3

the balancing requirements have been met,

That is that Plaintiff has met the generally stated the rule is that there must be a substantial threat of irreparable harm to the Plaintiff, that injury must outweigh any potential harm to Defendants and there is no substantial risk to public interest.

Here, what the Plaintiff stands to lose is his home not just the most important investment any person ever makes but the place where one has chosen to make his life, to build his future, a place which by definition the law has ruled not replaceable by mere money.

As to the Defendants here, issuing a Temporary Restraining Order, particularly given the current real estate market will do them essentially no damage at all It must be noted, that the Plaintiff has justifiably asked for a demonstration of the right to actually legally hold the foreclosure. 12 USC § 2605 clearly provides that the borrower must be given notice of the transfer of servicing agreements and here Plaintiff has no way of knowing what US Bank's actual relationship is. Thus unless and until this can be determined it is submitted that Plaintiff has the ability to have the matter stayed so as to obtain information

Further Plaintiff filed an action under the trust in lending act (TILA) as his declaration shows he was not told the trust about the loan or its consequences. He was not told that the reason this loan which has now placed him in such a position was done this way solely to generate fees.

As this court itself held in *Nichols v.Deutsche Bank* 2007 WL418111 (SD Cal) this court has " jurisdiction because the matter was filed under the Truth in Lending Act"

It is submitted that this fact alone gives Connors the ability to have a TRO issued. It is not excessive to restrain the occurrence of that event until there is actually proof that the Defendants have the right to the relief they seek, a relief which is not reviewed by any court and is extremely harsh.

## LIKELIHOOD OF SUCCESS

The final prong of the test for issuance of the release sought here is what has been labeled likelihood of success.  This is a difficult term to encompass since one must note from the outset that it is likelihood of success as viewed from the perspective of the time at which the request is

P&A in Support for Temp Restraining Order    4

1  filed and the courts have long held that certainty is not required..

2      Plaintiffs are not required to show positively that they will prevail on the merits.  A

3  reasonable probability is sufficient See *Glider v PGA Tour Inc*. 936 F. 2nd 417, 422 (9 Cir 1991).

4      Various courts have used various tests for this rule that The Ninth Circuit however has set

5  forth a test which is formulated in the alternative.  That is a Plaintiff may meet his burden by

6  showing "either a combination of probable success on the merits and the possibility of

7  irreparable injury; or serious questions as to these matters and the balance of hardships tips

8  sharply in the Plaintiffs favor" *Department of Parks & Rec for the State of California v. Bazaar*

9  *Del Mundo Inc.* 448 F. 3rd 1118,1123 (9h Cir 2006).

10     The court continued to note that the two "formulations represent two points on a sliding

11  scale in which the required degree of irreparable harm increases as the probability of success

12  decreases"id at pg 1123-1124.

13     The Circuit Court, has also noted that where there are "serious questions" that is

14  questions that involve a fair chance of success on the merits that cannot be resolved by the one

15  way or the other at the hearing on the injunction "and they as to which the court perceives the

16  need to preserve the status quo lest one side prevent resolution of the question or execution of

17  any judgment by altering the status quo" *Republic of the Philippines v Marcos* 862 F. 2[nd] 1355,

18  1362 (9 Cir 1988).

19     Here, the Plaintiff has demonstrated the existence of that reasonable likelihood of success

20  with regard to very serious questions.  Unlike the case decided by Judge Whelan a little over a

21  month ago, *Lyndon v.  Countrywide Home Loans* (Docket number 08 - CV-0837) May 13, 2008

22  the Plaintiff here has both filed suit and sought relief prior to the occurrence of the sale.

23     Admittedly, it was very shortly before the foreclosure sale but the declaration of the

24  Plaintiff demonstrates clearly that he had been actively attempting to obtain information so as to

25  determine whether the sale was lawful.

26     These efforts, would clearly show a demonstration of violation of both the Federal and

27  State Fair Debt Collection Practices Act.

28     However, even absent the allegations which are to be added to an amended complaint it is

P&A in Support for Temp Restraining Order    5

submitted what Plaintiff has submitted is both sufficient and has demonstrated a sufficient

likelihood of success when given the extraordinarily serious event which will take place if the

TRO does not issue to justify the court entering the order and setting the matter for a hearing for

preliminary injunction within an appropriate time frame.

### CONCLUSION

For all of these reasons it is respectfully requested the Plaintiffs request be granted and

that a temporary restraining order issue restraining all Defendants from taking any action

negatively affecting Plaintiffs rights to the property.


Dated: July 2, 2008                              JANIS L. TURNER ALC



                                                 By_____/s/_____
                                                 Janis L. Turner Esq. Counsel for
                                                 Plaintiff RICHARD A. CONNORS

1  JANIS L. TURNER (Cal Bar No. 079217)
   JANIS L TURNER ALC
2  2515 Camino Del Rio South Ste. 242B
   San Diego CA 92108
3  (619)718-4800 (voice)
   (619)718-4815 (fax)
4  jlt@janturnerlaw.com

5  Attorney for Plaintiff RICHARD A. CONNORS

6

7

8              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF CALIFORNIA
9

10  RICHARD A. CONNORS, an individual    )    Case No 08 CV 1134 L LSP
                                          )
11                Plaintiff               )    CERTIFICATE OF JANIS L. TURNER
                                          )    RE TEMPORARY RESTRAINING
12  vs.                                   )    ORDER RULE 65
                                          )
13  HOME LOAN CORP. dba EXPANDED          )
    MORTGAGE CREDIT, a Texas Corp.        )
14  MORTGAGE ELECTRONIC                   )    Date:    July 2, 2008
    REGISTRATION SYSTEMS (MERS) a         )    Time:    tbd
15  Delaware Corp., U.S. BANK NATIONAL    )    Judge:   Honorable M. James Lorenz
    ASSOCIATION as trustee for CREDIT     )    Dept:    14
16  SUISSE FIRST BOSTON HEAT-2005-2       )
    AMERICA'S SERVICING COMPANY           )
17  CAL WESTERN RECONVEYANCE              )
    CORP., a California Corp.             )
18                                        )
                  Defendants              )
19  _____)

20        I Janis L. Turner am the attorney of record for Richard A. Connors Plaintiff in the above

21  entitled action. In support of Plaintiffs *ex parte* motion for a temporary restraining order,

22  pursuant to F. RCP 65 (b) I hereby certify as follows:

23  1.    On or  about June 18, 2008, I was originally consulted and retained by Plaintiff.

24  2.    On the date of that consultation there was a pending TRO hearing pursuant to Plaintiffs

25        action filed in pro-per in the Superior Court of the State of California.

26  3.    I duly reviewed his complaint filed therein and determined that the case in all actuality

27        most probably should be filed in the United States District Court.

28  4.    I thereafter drafted a complaint pursuant to Federal practice.

                                          1

5.    On or about June 24, 2008, the within complaint was duly filed.

6.    On or about June 26, 2008 the complaint together with the appended and initial notice of my intention to seek emergent *ex parte* relief was duly given to my attorneys service Knox with instructions to immediately serve both the complaint and a notice on all Defendants at their registered agent for service of process.

7.    Appended please find the declarations and or computer files from Knox Attorney Service concerning said service. (Exhibit 1)

8.    I have now determined that the two critical defendants U.S. BANK and CAL-WESTERN RECONVEYANCE CORP were served with both the complaint and the initial notice of my intention to seek ex parte relief.(Exhibit 2.)

9.    Additionally, as set forth in the attached letter, I attempted to informally resolve the impending Foreclosure sale currently set for July 3, 2008.

10.    I duly set this motion for July 2, 2008 as it was the earliest available date prior to the sale at which I believed I could both be prepared and have at least the potential of giving notice.

11.    I further selected this date because I am as of June 30, 2008 in trial in the Superior Court, State of California, County of San Diego, El Cajon Branch in a matter in entitled *Castillo v Minet.* This two day trial is expected to conclude on the afternoon of July 1, 2008.

12.    My client's home is currently set for sale pursuant to non-judicial foreclosure at 10:00 AM on July 3, 2008. There will be immediate and irreparable harm if the TRO does not issue.

13.    As can be seen from the above, I have diligently attempted to give notice at the registered agents for the service of process listed for each of the Defendants by the Secretary of State for the State of California.

2

14.   I have further served a copy of all documents on counsel for CAL WESTERN who appeared at this mornings hearing.(Exhibit 3)

15.   I submit that this is an emergent matter requiring the issuance of a TRO without notice.

Dated: July 2, 2008                           JANIS L. TURNER ALC


                                              By_____/s/_____
                                              Janis L. Turner Esq. Counsel for
                                              Plaintiff RICHARD A. CONNORS

**EXHIBIT 1 TO CERTIFICATION**



**Knox**
S E R V I C E S

### SERVICE STATUS REPORT

| | |
|---|---|
| **Work Order:** | 0400715-01 |
| **Client:** | 06379 - JANIS L. TURNER, ESQ. |
| **Attorney:** | |
| **Attention:** | LORI |
| **File Number:** | 08CV1134LLSP |
| **Subject Name:** | U.S. BANCORP AUTHORIZED AGENT FOR SERVICE: CT CORPORATION SYSTEM |
| **Address 1:** | 818 WEST 7TH STREET |
| | LOS ANGELES, CA 90017 |

| Date | Time | Description of Activity |
|---|---|---|
| 6/27/2008 | 8:27AM | Personal service effectuated at the business address Margaret Wilson |
| 6/30/2008 | 1:25PM | Invoice Created and Proof of Service Prepared 0407011 $ 115.50 |



**SERVICE STATUS REPORT**

**Work Order:** 0400715-02
**Client:** 06379 - JANIS L. TURNER, ESQ.
**Attorney:**
**Attention:** LORI
**File Number:** 08CV1134LLSP
**Subject** CAL-WESTERN RECONVEYANCE CORPORATION AUTHORIZED AGENT FOR
**Name:** SERVICE: YVONNE J. WHEELER
**Address 1:** 525 EAST MAIN STREET
EL CAJON, CA 92022

| Date | Time | Description of Activity |
|------|------|-------------------------|
| 6/27/2008 | 9:05AM | Personal service effectuated at the business address |
| 6/30/2008 | 12:23PM | Invoice Created and Proof of Service Prepared 0406958 $ 100.50 |



## SERVICE STATUS REPORT

| | |
|---|---|
| **Work Order:** | 0400715-03 |
| **Client:** | 06379 - JANIS L. TURNER, ESQ. |
| **Attorney:** | |
| **Attention:** | LORI |
| **File Number:** | 08CV1134LLSP |
| **Subject Name:** | MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. AUTHORIZED AGENT FOR SERVICE: AL SEASTRAND |
| **Address 1:** | 2216 16TH STREET |
| | SACRAMENTO, CA 95818 |

| Date | Time | Description of Activity |
|---|---|---|
| 6/27/2008 | 2:05PM | Personal service effectuated at the business address |
| 6/30/2008 | 1:25PM | Invoice Created and Proof of Service Prepared 0407010 $ 115.50 |

EXHIBIT 2 TO CERTIFICATION

1  JANIS L. TURNER (Cal Bar No. 079217)
   JANIS L TURNER ALC
2  2515 Camino Del Rio South Ste. 242B
   San Diego CA 92108
3  (619)718-4800 (voice)
   (619)718-4815 (fax)
4  jlt@janturnerlaw.com

5  Attorney for Plaintiff RICHARD A. CONNORS

6

7

8                 UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF CALIFORNIA
9

10  RICHARD A. CONNORS, an individual    )    Case No 08-CV-1134- L  LSP
                                          )
11               Plaintiff                )    NOTICE OF EMERGENT HEARING FOR
                                          )    ISSUANCE OF TEMPORARY
12  vs.                                   )    RESTRAINING ORDER
                                          )
13  HOME LOAN CORP. dba EXPANDED          )
    MORTGAGE CREDIT, a Texas Corp.        )
14  MORTGAGE ELECTRONIC                   )    Date:    July 2, 2008
    REGISTRATION SYSTEMS (MERS) a         )    Time:    10 AM
15  Delaware Corp., U.S. BANK NATIONAL    )    Judge:   Honorable M. James Lorenz
    ASSOCIATION as trustee for CREDIT     )    Dept:    14
16  SUISSE FIRST BOSTON HEAT-2005-2       )
    AMERICA'S SERVICING COMPANY           )
17  CAL WESTERN RECONVEYANCE              )
    CORP., a California Corp.             )
18                                        )
                 Defendants               )
19  _____)

20       Notice is hereby given that:

21       The undersigned attorney shall appear before the Honorable M. James Lorenz at the

22  Edward J. Schwartz United States Court House, 940 Front Street, San Diego, department 14 at

23  10 AM in the forenoon or as soon thereafter as she may be heard to see a temporary restraining

24  order and a hearing date for a preliminary order in the above entitled case to restrain any and all

25  actions relative to foreclosure of certain real property located at 402 Paso del Norte and bearing

26  Assessors parcel Number 187-500-21.

27

28

                                    1

Please note further that all relevant papers shall be filed via Electronic Case Filing (ECF) on or before June 30, 2008.

Dated: June 26, 2008                    JANIS L. TURNER ALC


By_____
Janis L. Turner Esq. Counsel for
Plaintiff RICHARD A. CONNORS

2

1    ### PROOF OF SERVICE BY MAIL

2    **CASE NAME:**    **RICHARD A. CONNORS** *vs.* **HOME LOAN CORP. Et al**

3    **CASE NUMBER:**    **08 CV 1134 L LSP**

4         I, LORETTA MACPHERSON, state that I am employed in the aforesaid County, State of
California; I am over the age of eighteen years and not a party to the within action; my business
5    address is 2515 Camino del Rio South, Suite 242B, San Diego, CA 92108.

6         On **June 26, 2008** I served the foregoing ***NOTICE OF EMERGENT HEARING FOR***
***ISSUANCE OF TEMPORARY RESTRAINING ORDER*** on the interested parties by placing a
7    true copy thereof, enclosed in a sealed envelope addressed as follows and/or by one of the methods
of service as follows:

8
Cal-Western Reconveyance Corporation
9    C/O Margaret Padilla - Agent for Service of Process
525 East Main Street
10   El Cajon, CA 92022

11   U.S. Bancorp
C/O CT Corporation Systems - Agent for Service of Process
12   818 West Seventh Street
Los Angeles, CA 90017
13
Mortgage Electronic Registration System, Inc
14   C/O Al Seastrand - Agent for Service of Process
2216 16th Street
15   Sacramento, CA 95818

16
17   _____    **BY MAIL**: I am readily familiar with this firm's practice of collection and
processing of correspondence for mailing with the United States Postal Service.
18   Under that practice such sealed envelope(s) would be deposited with the United
States Postal Service the same day in the ordinary course of business pursuant to
19   C.C.P. 1013(a). I am aware that on motion of party served, service is presumed
invalid if postal cancellation date or postage meter date is more than 1 day after date
20   of deposit for mailing in affidavit.

21   _____    **BY FAX**: I caused to be transmitted by facsimile machine, pursuant to California
Rules of Court, Rule 2006. The fax number of the party being served is fax number
22   _____ The facsimile machine I used complied with Rule 2003 and
no error was reported by the machine on or before 5:00pm for California service or
23   **on or before 4:30pm for San Diego service**, Pursuant to Rule 2006, I caused the
**machine to print a transmission record of the transmission**, a copy of which is
attached to this declaration made on
24
25   ___✔___    **BY PERSONAL SERVICE: Knox Attorney Service** delivered said document(s)
to __*SEE ABOVE*__ by personally handing him the documents named above.

26   _____    **BY EXPRESS MAIL**: By delivering such documents to an overnight mail service
or an authorized courier in a sealed envelope or package designated by the express
27   service courier to be delivered the following business day to _____.

28

1  [ ]     **(STATE)**     I declare under penalty of perjury under the laws of the State of California that
2  the foregoing is true and correct.

3  [✔ ]    **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court
   at whose direction the service was made.

4  DATED: June 26, 2008

5

6                                                          LORETTA MACPHERSON

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on June 30, 2008 the   Application for TRO,

Declaration of Plaintiff RICHARD CONNORS with exhibits, Points and Authorities and

and declaration of counsel re Service was filed electronically with the clerk of the court

using the CM/ECF system which will automatically send e-mail notice of filing to the

following counsel of record. Counsel additonally served a courtesy copy of the within

document on the Hon M. James Lorenz via Knox Attorney Service.

Additionally as no Defendant has yet appeared they were served with a Notice of

intention to appear ex parte on July 2, 2008 and informed that all relevant documents

would be available through ECF

Dated: June 30, 2008                                    Janis L. Turner ALC

By_____ -S-_____
Janis L. Turner, Esq.
(Cal Bar No 079217)
Attorney for Plaintiff
RICHARD CONNORS

**EXHIBIT 3 TO CERTIFICATION**

1

## PROOF OF SERVICE BY MAIL

2  **CASE NAME:**    **RICHARD A. CONNORS** *vs.* **HOME LOAN CORP. Et al**

3  **CASE NUMBER:**    **08 CV 1134 L LSP**

4        I, LORETTA MACPHERSON, state that I am employed in the aforesaid County, State of
California; I am over the age of eighteen years and not a party to the within action; my business
5  address is 2515 Camino del Rio South, Suite 242B, San Diego, CA 92108.

6        On **July 2, 2008** I served the foregoing ***NOTICE OF MOTION FOR ISSUANCE OF***
***TEMPORARY RESTRAINING ORDER, POINTS & AUTHORITIES IN SUPPORT OF***
7  ***MOTION FOR TEMPORARY RESTRAINING ORDER, DECLARATION OF PLAINTIFF***
***RICHARD CONNORS SUPPORTING TEMPORARY RESTRAINING ORDER, CERTIFICATE***
8  ***OF SERVICE, CERTIFICATE OF JANIS L. TURNER RE TEMPORARY RESTRAINING***
***ORDER RULE 65, SUPPLEMENTAL POINTS & AUTHORITIES IN SUPPORT OF MOTION***
9  ***FOR TEMPORARY RESTRAINING ORDER, PROPOSED ORDER*** on the interested parties by
placing a true copy thereof, enclosed in a sealed envelope addressed as follows and/or by one of the
10  methods of service as follows:

11  Thomas Abbott
Pite Duncan, LLP
12  1820 E. First Street, Suite 420
Santa Ana, CA 92705
13  619-326-2459
619-326-2430 fax

14

15  _____    **BY MAIL:** I am readily familiar with this firm's practice of collection and
processing of correspondence for mailing with the United States Postal Service.
16        Under that practice such sealed envelope(s) would be deposited with the United
States Postal Service the same day in the ordinary course of business pursuant to
17        C.C.P. 1013(a). I am aware that on motion of party served, service is presumed
invalid if postal cancellation date or postage meter date is more than 1 day after date
of deposit for mailing in affidavit.

18

19  ✔ _____    **BY FAX:** I caused to be transmitted by facsimile machine, pursuant to California
Rules of Court, Rule 2006. The fax number of the party being served is fax number
20        __619-326-2430__   The facsimile machine I used complied with Rule 2003 and no
error was reported by the machine on or before 5:00pm for California service or **on**
**or before 4:30pm for San Diego service,** Pursuant to Rule 2006, I caused the
21        **machine to print a transmission record of the transmission,** a copy of which is
attached to this declaration made on

22

23  _____    **BY PERSONAL SERVICE: Knox Attorney Service** delivered said document(s)
to __*SEE ABOVE*__ by personally handing him the documents named above.

24

25  _____    **BY EXPRESS MAIL:** By delivering such documents to an overnight mail service
or an authorized courier in a sealed envelope or package designated by the express
service courier to be delivered the following business day to _____.

26

27

28

[ ]    **(STATE)**    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[✔ ]    **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

DATED: <u>July 2, 2008</u>

LORETTA MACPHERSON

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on July 2, 2008 the   Application for TRO,

Declaration of Plaintiff RICHARD CONNORS with exhibits, Points and Authorities and

and declaration of counsel re Service was filed electronically with the clerk of the court

using the CM/ECF system which will automatically send e-mail notice of filing to the

following counsel of record. Counsel additonally served a courtesy copy of the within

document on the Hon M. James Lorenz via Knox Attorney Service.

Additionally as no Defendant has yet appeared they were served with a Notice of

intention to appear ex parte on July 2, 2008 and informed that all relevant documents

would be available through ECF

Dated: July 2, 2008                         Janis L. Turner ALC


                                            By_____-S-_____
                                            Janis L. Turner, Esq.
                                            (Cal Bar No 079217)
                                            Attorney for Plaintiff
                                            RICHARD CONNORS