JANIS L. TURNER (Cal Bar No. 079217)
JANIS L TURNER ALC
2515 Camino Del Rio South Ste. 242B
San Diego CA 92108
(619)718-4800 (voice)
(619)718-4815 (fax)
jlt@janturnerlaw.com

Attorney for Plaintiff RICHARD A. CONNOR*S*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD A. CONNORS, an individual ) | Case No 08 CV 1134 L  LSP |
| ) | |
| Plaintiff ) | 1st AMENDED COMPLAINT (VERIFIED) |
| ) | |
| vs. ) | 1. VIOLATION OF 15 USCA 1611 ET SEQ. |
| ) | 2. VIOLATION OF 26 USCA 2605 ET SEQ. |
| HOME LOAN CORP. dba EXPANDED ) | 3. VIOLATION OF 15 USCA 1602 ET SEQ. |
| MORTGAGE CREDIT, a Texas Corp. ) | 4. VIOLATION OF 15 USCA 1692 ET SEQ |
| MORTGAGE ELECTRONIC ) | And Cal Civil Code § 1788 |
| REGISTRATION SYSTEMS (MERS) a ) | 5  BREACH OF FIDUCIARY DUTY |
| Delaware Corp., U.S. BANK NATIONAL ) | 6 . BREACH OF COVENANT |
| ASSOCIATION as Trustee for CREDIT ) | 7. QUIET TITLE |
| SUISSE FIRST BOSTON HEAT-2005-2 ) | 8 . DECLARATORY RELIEF |
| AMERICA'S SERVICING COMPANY ) | |
| CAL WESTERN RECONVEYANCE ) | |
| CORP., a California Corp. ) | Jury is Demanded |
| ) | |
| Defendants ) | |
| _____ ) | |

Comes now Plaintiff RICHARD CONNORS who alleges as follows:

**JURISDICTION**

1.    Jurisdiction within this court is predicated upon various Federal questions arising under

the United States Code including but not limited to 15 USCA § 1640 et seq. Commonly

know as the Truth in Lending Act (TILA): 12 USCA § 2605 the Real Estate Settlement

Procedures Act (RESPA) and 15 USCA § 1602 et seq. commonly known as the

Homeowners Equity Protection Act, as well as 15 USCA §1692 Commonly know as the

Fair Debt Collection Practices Act

2.

1 st Amended Complaint - CONNORS        1

Plaintiff further pleads jurisdiction pursuant to the doctrine of *pendente* jurisdiction as to various related State Law causes of action.

### VENUE

3.    Plaintiff pleads venue within this district. He is a resident within said district, and as the Defendants in each of them have or are doing business within the district and further as the *pendente* causes of action pursuant to California law concern real property within the County of San Diego.

### PARTIES

4.    Plaintiff  RICHARD A. CONNORS is an individual and at all times relevant hereto was a resident in the city of Escondido, County of San Diego State of California.

5.    Defendant HOME LOAN CORPORATION dba EXPANDED MORTGAGE CREDIT, (HOME LOAN) is a Texas Corporation at all times relevant hereto doing business as a financial institution providing mortgages on real property.

6.    Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) is a Delaware Corporation at all times relevant hereto in the business all of an acting as nominee for the lender within the mortgage herein.

7.    Defendant U.S. BANK NATIONAL ASSOCIATION (US BANK)is a Corporation designating itself   as trustee for CREDIT SUISSE FIRST BOSTON HEAT-2005-2 .

8.    Defendant AMERICA' S SERVICING COMPANY (ASC)  is a business entity form unknown with its principal offices located in Des Moines Iowa.

9.    Defendant CAL WESTERN RECONVEYANCE CORPORATION ( CAL-WESTERN) is a California Corporation with its principal place of business located at 525 E. Main St. El Cajon California.

10.   Plaintiff respectfully requests of the court leave to add new or further Defendants by leave of Court when and if such shall become known.

### COMMON ALLEGATIONS

11.   On or about November 7, 2003, Plaintiff RICHARD A. CONNORS (hereinafter CONNORS) purchased certain real property commonly known as 402 Paso del Norte,

Escondido, County of San Diego, State of California. Said property bearing the Assessors Parcel Number (APN) 187 – 500 – 21, and more fully described in the grant deed and legal description appended hereto and incorporated by reference as (Exhibit A).

12. Thereafter, on or about November 19, 2004, Plaintiff CONNORS refinanced the property with a loan through Defendant HOME LOAN by means of an Adjustable Rate Promissory Note appended hereto and incorporated as (Exhibit B).

13. Said Adjustable Rate Note was based upon the LIBOR six-month adjustable rate.

14. Plaintiff alleges that Defendants and each of them neither explained the workings of all of the rate, how it is computed nor its inherent volatility.

15. Further, on information and belief Plaintiff alleges that the Defendants charged and obtained improper fees for the placement of his loan as "sub-prime" when he qualified for a prime rate mortgage which would have generated less in fees and interest.

16. The loan was thereafter secured by a deed of trust to Defendant HOME LOAN and MERS as a beneficiary (Exhibit C).

17. On information and belief and by means unknown, that debt was thereafter securitized and fractionalized and converted into securities traded across duly authorized public markets.

18. On information and belief Plaintiff alleges that the service of the purported Mortgage was without his knowledge in some means transferred from or by defendant AMERICA'S SERVICING COMPANY either completely or by association or other means unknown to defendant U.S. BANK NATIONAL ASSOCIATION who unknown to CONNORS provided services in various forms to be determined to others which were of such a nature as to render them a "Servicer" within the definition found within 26 USCA § 2605

19. Plaintiff CONNORS is, as he informed all of those involved in this mortgage, self-employed and as a result he experienced some cash flow problems in early 2008.

20. As he had experienced cash flow problems and had begun to receive letters and other communications concerning collection of his mortgage. Plaintiff therefore began to send communications to AMERICA'S SERVICING COMPANY the service for the mortgage

1 st Amended Complaint - CONNORS        3

he sought to obtain information concerning the actual ownership and status of the mortgage. A copy of those letters is appended hereto as (Exhibit D).

21.  Plaintiff has received no satisfactory response and further was not informed that all or a substantial portion of the servicing functions had been in some form transferred to defendant U.S. BANK,

22.  On or about March 11, 2008, Plaintiff received a Notice of Default executed by Defendant CAL WESTERN RECONVEYANCE CORPORATION (CAL WESTERN) appended hereto and incorporated by reference as (Exhibit E).

23.  Immediately after the receipt of the Notice of Default Plaintiff CONNORS duly sent to all Defendants a duly executed demand for validation demanding information including but not necessarily limited to production of all documents relative to the purported mortgage including the loan documents as well as all documents evidencing all purchases, sales, alienation or other transfers the purported mortgage,

24.  On information and belief he alleges that he received not documents which were responsive to these demands. He did receive various letters but none were, on information and belief properly responsive.

25.  Thereafter, on or about June 12, 2008, Defendant CAL WESTERN caused to be filed a notice of trustees sale to take place on July 3, 2008. Said notice is incorporated by reference and appended hereto as (Exhibit F).

**FIRST CAUSE OF ACTION**

**VIOLATION OF 15 USCA 1611 ET SEQ.**

**(ALL DEFENDANTS EXCEPT CAL-WESTERN)**

26.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 25 inclusive and incorporates same as though set forth at length.

27.  On information and belief Plaintiff alleges that the Defendants and each of them is directly or though agents or employees entities or persons actively involved in the extension of credit as said term is defined under the Truth in Lending Statute (TILA).

1 st Amended Complaint - CONNORS        4

28. On information and believe Plaintiff alleges that Defendants and each of them being subject to the requirements of the Truth in Lending Act have violated the requirements of the said act in that among other things:

    a. They have refused and continued to refuse to validate and otherwise make a full accounting and required disclosures as to the true finance charges and fees.

    b. They have improperly retained funds belonging to Plaintiff in amounts to be determined.

    c. To disclose the status of the ownership of said loans.

29. Plaintiff further alleges that these violations are such as to require rescission and or cancellation of the loan herein and return of all funds received by Defendants from Plaintiff.

30. Plaintiff further alleges that he is entitled to compensatory damages and an amount to be determined at trial.

31. Plaintiff further alleges that they are also entitled to attorney fees according to statute.

32. On information and belief Plaintiff alleges that the Defendants acted in violation of the act, willfully, maliciously, oppressively and fraudulently and in conscious disregard for the rights of Plaintiff and as such Plaintiff is entitled to punitive damages.

**SECOND CAUSE**

**VIOLATION OF 26 USCA 2605 ET SEQ.**

**(ALL DEFENDANTS EXCEPT CAL WESTERN)**

33. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 32 inclusive and incorporates same as though set forth at length.

34. On information and belief Plaintiff alleges that Defendants and each of them are such as to fall within the requirements of the Real Estate Settlement Procedures Act (RESPA).

35. On information and belief Plaintiff alleges that the Defendants and each of them placed loans for the purpose of unlawfully increasing and otherwise obtaining yield spread fees and amounts in excess of what would have been lawfully earned.

1 st Amended Complaint - CONNORS          5

36. On information and belief Plaintiff further alleges that in addition to the requirements of RESPA Defendants ASC and US BANK acted either individually or jointly as "Servicers as that term is used within the act and either individually or jointly violated the requirements of 26 USCA § 2605 (b) in that the servicing contract or duties thereunder were transferred or hypothecated with out required notice

37. Plaintiff further alleges that these violations are such as to require rescission and/or cancellation of the loan herein on and return of all funds received by Defendants from Plaintiff.

38. Plaintiff further alleges that he is entitled to compensatory damages at an amount to be determined at trial.

39. Plaintiff further alleges that they are also entitled to attorney fees according to statute.

## THIRD CAUSE OF ACTION

## VIOLATION OF 15 USCA 1602 et seq.

## (ALL DEFENDANTS EXCEPT CAL WESTERN)

40. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 39 inclusive and incorporates same as though set forth at length.

41. On information and belief Plaintiff alleges that the mortgage obtained by him through Defendant HOME LOAN and thereafter by means unknown obtained and enforced by other Defendants herein falls within the purview 1602 et sec. commonly known as the Home Ownership and Equity Protection Act of 1994.

42. On information and belief Plaintiff further alleges that the within loan was placed in violation of the above act in that it was placed and administered and otherwise utilized without regard to Plaintiff's income or cash flow and with the intention of inducing default.

43. Plaintiff became aware of this extension upon discovery of the intent to wrongfully foreclose upon and sell his property.

1 st Amended Complaint - CONNORS          6

44.   As a direct and legal consequence of the above conduct, Plaintiff has been damaged in amounts according to proof at time of trial.

### FOURTH CAUSE OF ACTION

### VIOLATION OF 15 USCA § 1692 and CALIFORNIA CIVIL CODE § 1788

### (DEFENDANTS U.S. BANK, ASC and CAL-WESTERN)

45.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 44 inclusive and incorporates same as though set forth at length.

46.   On information and belief Plaintiff alleges that the above defendants are "debt collectors" either directly or through agents as that term is used in both the United State Code and the California Civil Code at § 1788 et seq.

47.   Plaintiff alleges that he duly and properly on more than one occasion requested validation of the "debt" herein under both codes.

48.   He further alleges that Defendants did not respond to his demands in such a way as to meet the requirements of the act.

49.   He alleges that as such he is entitled to statutory damages under both acts.

### FIFTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

### (ALL DEFENDANTS EXCEPT CAL WESTERN)

50.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 49 inclusive and incorporates same as though set forth at length.

51.    At all times relevant hereto Defendants created, accepted and acted in a fiduciary relationship of great trust and acted for and were the processors of property for the benefit of Plaintiff.

52.   Defendant further placed himself in a position of great trust by virtue of expertise represented by and through its employees.

53.   On information and belief Plaintiff alleges that Defendant breached the fiduciary duty owed to the Plaintiff. They have acted and continue to act for their own benefit and to the detriment of Plaintiff.

1 st Amended Complaint - CONNORS          7

54.  Among other things they have placed and negotiated loans without due care to the best interest of Plaintiff or for the protection of his rights thereunder.

55.  As a direct and legal result of said breach of fiduciary duty Plaintiff has suffered economic damage and loss of funds and payment of fees improperly incurred in an amount according to proof at time of trial.

56.  Defendant acted willfully and maliciously oppressively and fraudulently and in conscious disregard of the rights of Plaintiff and as such Plaintiff is entitled to punitive damage.

## SIXTH CAUSE OF ACTION

## BREACH OF COVENANT

## (ALL DEFENDANTS EXCEPT CAL WESTERN)

57.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 56 inclusive and incorporates same as though set forth at length.

58.  On information and belief Plaintiff alleges that at all times mentioned herein there existed between Plaintiff and  Defendants either a direct or implied contractual covenant of good faith and fair dealing requiring Defendants and each of them to safeguard protect or otherwise care for the assets and/or rights of Plaintiff.  Said covenant prohibited them from activities interfering with or contrary to the rights of Plaintiff.

59.  On information and belief Plaintiff alleges that the attempt to foreclose upon property lawfully belonging to Plaintiff without production of documents demonstrating the lawful rights for said foreclosure constitutes a breach of the said covenant of good faith and fair dealing.

60.  As a direct and legal result of said acts by Defendants and each of them Plaintiff alleges that he has been damaged legally and proximately in amounts according to proof at time of trial.

## SEVENTH CAUSE OF ACTION

## QUIET TITLE

## (U.S. BANK AND ALL DEFENDANTS KNOWN OR UNKNOWN AND CLAIMING ANY INTEREST IN THE PROPERTY)

61. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 60 inclusive and incorporates same as though set forth at length.

62. Plaintiff is the owner in fee and is in possession and control of certain real property commonly known as 402 Paso del Norte, in the City of Escondido, County of San Diego, State of California and more fully described in the grant deed and legal description appended hereto as (Exhibit A) and incorporated by reference.

63. Plaintiff obtained simple title to the above described real property by Grant Deed dated and/or recorded in the office of the Recorder of the County of San Diego as set forth in (Exhibit A).

64. Defendant US BANK claims an interest or estate in Plaintiffs above described property disputing or denying Plaintiffs right to ownership and by contending that ownership is or will rest in them by means of a trustee's sale.

65. Plaintiff alleges that Defendant has no such right of title or estate in said property in that sale proposed will be fraudulent or otherwise illegal and transfer no right to Defendants.

66. Defendant has wrongfully interfered with or threaten to interfere with Plaintiff's use and enjoyment of the above described property in that they threaten to dispossess him.

67. Defendant's threat to dispossess Plaintiff of his home unless and until enjoined or restrained by order of the court will cause grave and irreparable injury to Plaintiff in that he will be deprived of the use and enjoyment of unique property.

68. Plaintiff has no adequate remedy at law for the threatened and continuing conduct in that he will have no home and will lose all he has put into said home. Said loss is not one which can be compensated by mere payment of damages.

69. Plaintiff further alleges that the conduct herein is of such a character as to give hime title to the above described property in fee.

1 st Amended Complaint - CONNORS          9

**SEVENTH CAUSE OF ACTION**

**DECLARATORY RELIEF**

**(ALL DEFENDANTS)**

70.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 69  inclusive and incorporates same as though set forth at length.

71.     Pursuant to 28 USCA 2201 et seq. a dispute has arisen between and among the Plaintiff and the Defendants herein and each of them as to the duties and obligations of the respective parties with regard to the loan and/or foreclosure.

72.     These disputes concern but are not necessarily limited to the ownership and/or right of foreclosure.

73.     As these questions concern issues with regard to Plaintiff's home he is thus required to seek this relief.

74.     Plaintiff further alleges that a declaration of rights and duties of the parties herein by the court is essential to determine the actual status and validity of the loan and any rights duties and/or obligations as to the enforcement of it.

WHEREFORE Plaintiff prays damages and other relief as follows:

      1     Compensatory damages according to proof

      2.     A judicial declaration of the rights duties and obligations of the parties hereto

      3     Statutory damages

      4.     Punitive damages

      5.     Injunctive relief including the immediate issuance of a temporary restraining order and thereafter a preliminary injunction to maintain the status quo pending adjudication.

      6.     Attorneys' fees according to statute

7.     Costs of suit

8.     Such other and further relief as this court shall deem fair equitable and just

Dated: July 3, 2008                                    JANIS L. TURNER ALC


By_____/s/_____
Janis L. Turner Esq. Counsel for
Plaintiff RICHARD A. CONNORS

VERIFICATION

   I am the Plaintiff in this action. I  have read the foregoing Complaint  and it is true of my own knowledge except as to those matters stated on information or belief and as to those matters, I believe it to be true.

   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this ___3rd___ day of_July_2008, at Escondido  County of San Diego  State of California.


_____/s/_____
RICHARD CONNORS

CONNORS
    Complaint Exhibits

ORS

A

RECORDING REQUESTED BY:
**STEWART TITLE COMPANY.**

WHEN RECORDED MAIL TO:

Richard A. Connors
402 Paso Del Norte
Escondido, California 92026

ORDER NO.    06-237767
ESCROW NO.   2830338A
APN.         187-500-21

DOC # 2003-1390277

NOV 19, 2003 2:45 PM

17408

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:        740.50
OC:          OC

2003-1390277

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s):

DOCUMENTARY TRANSFER TAX is:  $720.50          CITY TAX

☒ computed on full value of property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at time of sale.
☐ Unincorporated area:   ☒ . City of Escondido, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Wendell K. Moate and Gabrielle L. Moate, as Trustees of The Moate Family Trust U/D/T October 27, 1999

hereby **GRANT(S)** to Richard A. Connors, an umarried man

the following described real property in the City of Escondido, County of San Diego, State of California:

DATE:    November 7, 2003

STATE OF CALIFORNIA              }
                                 } ss.
COUNTY OF   San Diego            }

On _november 10,2003_ before me, _MARY C. SANCHEZ_, personally appeared _Wendell K moATE & GAbRiellel moATE_ ~~personally known to~~ me (or proved to me on the basis of satisfactory evidence) to be the person(s), whose name(s) ~~is~~/are subscribed to the within instrument and acknowledged to me ~~that he/she~~/they executed the same in ~~his/her~~/their authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Mary C. Sanchez_

_Wendell K. Moate_ TTEE

_Gabrielle L. Moate_ TTEE

MARY C. SANCHEZ
COMM. # 1382333
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
COMM. EXP. NOV. 22, 2006

(This area for official notarial seal)

MAIL TAX STATEMENTS AS DIRECTED ABOVE

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| A       | 1    | 2   |

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN IS SITUATED IN THE STATE OF
CALIFORNIA, COUNTY OF SAN DIEGO AND IS DESCRIBED AS FOLLOWS:

THAT PORTION OF THE NORTHWEST QUARTER OF THE NORTHEAST QUARTER
OF SECTION 33, TOWNSHIP 11 SOUTH, RANGE 2 WEST, SAN BERNARDINO
BASE AND MERIDIAN, IN THE COUNTY OF SAN DIEGO, STATE OF
CALIFORNIA, ACCORDING TO UNITED STATES GOVERNMENT SURVEY,
APPROVED JANUARY 26, 1981, ACCORDING TO THE OFFICIAL PLAT
THEREOF DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF SAID NORTHWEST QUARTER OF
NORTHEAST QUARTER OF SECTION 33; THENCE EAST 417 FEET, MEASURED
ALONG THE SOUTH LINE OF SAID NORTHWEST QUARTER OF THE NORTHEAST
QUARTER; THENCE NORTH 417 FEET ALONG A LINE PARALLEL WITH THE
WEST LINE OF SAID NORTHWEST QUARTER OF THE NORTHEAST QUARTER;
THENCE WEST 417 FEET ALONG A LINE PARALLEL WITH THE SOUTH LINE
OF SAID NORTHWEST QUARTER OF THE NORTHEAST QUARTER TO A POINT
IN THE WEST LINE THEREOF; THENCE SOUTH ALONG SAID WEST LINE,
417 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM THAT PORTION OF LYING EASTERLY OF THE
WESTERLY LINE OF THE COUNTY ROAD AS SET FORTH IN SURVEY ON FILE
IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY,
CALIFORNIA.

ALSO EXCEPTING THEREFROM THE NORTH 100 FEET.

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| A | 2 | 2 |

## ADJUSTABLE RATE NOTE

MIN: 100056400740400489

(LIBOR Six-Month Index (As Published In The Wall Street Journal)—Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

November 19, 2004                ESCONDIDO                    CALIFORNIA
                                   [City]                        [State]
                           402 PASEO DEL NORTE
                        ESCONDIDO, CALIFORNIA 92026
                             [Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 500,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is HOME LOAN CORPORATION DBA EXPANDED MORTGAGE CREDIT. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.750 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.  PAYMENTS

#### (A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **January 1, 2005**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **December 1, 2034**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2350 NORTH BELT EAST STE 850, HOUSTON, TEXAS 77032, or at a different place if required by the Note Holder.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                         Form 3520  1/01    *(Page 1 of 5 Pages)*

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| **B4**  | 1    | **9** |

INITIALS: _____  _____

(B)  Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 2,917.86.  This amount may change.
(C)  Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A)  Change Dates
The interest rate I will pay may change on the first day of December, 2006, and on that day every 6th month thereafter.  Each date on which my interest rate could change is called a "Change Date."
(B)  The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.
(C)  Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding FOUR and THREE/FOURTHS percentage points ( 4.750 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.
(D)  Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than 8.7500 % or less than 5.7500 %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE and ONE/HALF percentage points (1.50 %) from the rate of interest I have been paying for the preceding 6 months.  My interest rate will never be greater than 12.7500 % or less than 5.7500 %.
(E)  Effective Date of Changes
My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.
(F)  Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                            Form 3520  1/01      (Page 2 of 5 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B4 | 2 | 9 |

INITIALS: _____  _____

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note. If I make a full prepayment or a partial prepayment, I will pay the prepayment charges set forth below.

I may prepay all or any part of the unpaid balance of the principal at any time. If, however, I prepay any amount during the first 2 years of this Note, Lender may, at its option and as permitted by law, assess a prepayment penalty of 6 months' interest at the loan rate on the amount by which the aggregate of principal payments for a 12-month period exceeds 20.00% of the unpaid balance of the loan.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

By accepting partial payment of any payment, Note Holder does not waive the right to collect the remainder of such payment. Acceptance of any payment after maturity, or waiver of any breach or default of the terms of this Note shall not constitute a waiver of any later or other breach or default, and failure of Note Holder to exercise any of its rights shall not constitute waiver of such rights.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Acceleration

If I am in default, the Note Holder may without notice or demand, unless otherwise required by applicable law, require me to pay immediately the full amount of Principal that has not been paid and all interest that I owe on that amount.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3520  1/01    (Page 3 of 5 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B4 | 3 | 9 |

INITIALS: _____  _____

8.  GIVING OF NOTICES
    Unless applicable law requires a different method, any notice that must be given to me under this Note will
be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different
address if I give the Note Holder a notice of my different address.
    Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under
this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A)
above or at a different address if I am given a notice of that different address.

9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE
    If more than one person signs this Note, each person is fully and personally obligated to keep all of the
promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor,
surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations,
including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises
made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or
against all of us together.  This means that any one of us may be required to pay all of the amounts owed under
this Note.

10. WAIVERS
    I and any other person who has obligations under this Note waive the rights of notice of acceleration,
Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand
payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other
persons that amounts due have not been paid.

11. UNIFORM SECURED NOTE
    This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections
given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"),
dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep
the promises that I make in this Note.  That Security Instrument describes how and under what conditions I may
be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions
read as follows:
    **Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in
the Property" means any legal or beneficial interest in the Property, including, but not limited to, those
beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow
agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower
is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior
written consent, Lender may require immediate payment in full of all sums secured by this Security
Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by
Applicable Law.

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B4      | 4    | 9   |

INITIALS: _____  _____

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

..........................................................................................(Seal)
RICHARD A. CONNORS —Borrower

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-**Fannie Mae** UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna

Form 3520  1/01    *(Page 5 of 5 Pages)*

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| **B4** | 5 | **9** |

Loan No:   7404-0048                                      Data ID:  178
Borrower:  RICHARD A. CONNORS

# ADJUSTABLE RATE RIDER
(LIBOR Six-Month Index (As Published In The Wall Street Journal)—Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 19th day of November, 2004, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to HOME LOAN CORPORATION DBA EXPANDED MORTGAGE CREDIT ("Lender") of the same date and covering the property described in the Security Instrument and located at:

402 PASEO DEL NORTE
ESCONDIDO, CALIFORNIA  92026
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT.   THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 5.750 %.  The Note provides for changes in the interest rate and the monthly payments, as follows:

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of December, 2006, and on that day every 6th month thereafter.  Each date on which my interest rate could change is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding FOUR and THREE/FOURTHS percentage points ( 4.750 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                 Form 3138  1/01    (Page 1 of 2 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B4 | 6 | 9 |

Loan No: 7404-0048                                                      Data ID: 178

    The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

    (D) Limits on Interest Rate Changes

    The interest rate I am required to pay at the first Change Date will not be greater than 8.7500 % or less than 5.7500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE and ONE/HALF percentage points (1.50 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 12.7500 % or less than 5.7500 %.

    (E) Effective Date of Changes

    My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

    (F) Notice of Changes

    The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

 

...........................................................................(Seal)
    RICHARD A. CONNORS —Borrower

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3138  1/01     (Page 2 of 2 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B4      | 7    | 9   |

Loan No: 7404-0048
Borrower: RICHARD A. CONNORS

Data ID: 178

## LEGAL DESCRIPTION

Provide legal description here. Attach to the document to be recorded and file as one
instrument.

*(Page 1 of 1 Pages)*

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| **B4**  | 8    | **9** |

ORDER NO. 34353539

EXHIBIT "A"

That portion of the Northwest quarter of the Northeast quarter of Section 33, Township 11 South, Range 2 West, San Bernardino Base and Meridian, in the City of San Diego, County of San Diego, State of California, according to the United States Government Survey approved January 26, 1891, according to Official Plat thereof, described as follows:

Beginning at the Southwest corner of said Northwest quarter of the Northeast quarter of said Section 33, thence East 417 feet, measured along the South line of said Northwest quarter of the Northeast quarter, thence North 417 feet along a line parallel with the West line of said Northwest quarter of the Northeast quarter; thence West 417 feet along a line parallel with the South line of said Northwest quarter of the Northeast quarter to a point in the West line thereof; Township South along said West line, 417 feet to the point of beginning.

Except therefrom that portion lying Easterly of the Westerly line of the County Road as set forth in Surveys on file in the Office of the County Recorder of San Diego County, California.

Also except therefrom the North 100 feet.

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| **B4** | *9* | **9** |

Return to:
HOME LOAN CORP
ATTENTION: POST CLOSE
2350 NORTH BELT EAST STE 850
HOUSTON, TX 77032

—————————— [Space Above This Line For Recording Data] ——————————

Loan No:   7404-0048                                         Data ID:  178
Borrower:  RICHARD A. CONNORS

# DEED OF TRUST                    MIN: 100056400740400489

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated November 19, 2004, together with all Riders to this document.

(B) "Borrower" is RICHARD A. CONNORS , AN UNMARRIED MAN    . Borrower is the trustor under this Security Instrument.

(C) "Lender" is HOME LOAN CORPORATION DBA EXPANDED MORTGAGE CREDIT. Lender is A CORPORATION organized and existing under the laws of the State of TEXAS. Lender's address is 2350 NORTH BELT EAST STE 850          HOUSTON, TX 77032.

(D) "Trustee" is HOME LOAN CORPORATION DBA EXPANDED MORTGAGE CREDIT.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                Form 3005   1/01      (Page 1 of 16 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3      | 1    | 16  |

Loan No: 7404-0048                                                                Data ID: 178

(F) "**Note**" means the promissory note signed by Borrower and dated November 19, 2004. The Note states that Borrower owes Lender FIVE HUNDRED THOUSAND and NO/100-----Dollars (U.S. $ **500,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **December 1, 2034.**

(G) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider        ☐ Condominium Rider                    ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider
☐ 1-4 Family Rider             ☐ Biweekly Payment Rider
☐ Other(s) [specify]

(J) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "**Escrow Items**" means those items that are described in Section 3.

(N) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna              Form 3005    1/01        *(Page 2 of 16 Pages)*

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3      | 2    | 16  |

Loan No: 7404-0048                                         Data ID: 178

(R) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of ESCONDIDO:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of 402 PASEO DEL NORTE,
                                                  [Street]

ESCONDIDO, CALIFORNIA                          92026        ("Property Address"):
[City]                                         [Zip Code]

      TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna        Form 3005   1/01      (Page 3 of 16 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|----|
| B3      | 3    | 16 |

Loan No: 7404-0048

Data ID: 178

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3005    1/01        *(Page 4 of 16 Pages)*

| EXHIBIT | PAGE | OF |
|:---:|:---:|:---:|
| *83* | *4* | *16* |

Loan No: 7404-0048                                                      Data ID: 178

    3.  **Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

    If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

    Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3005    1/01          (Page 5 of 16 Pages)

| EXHIBIT | PAGE | OF |
|:---:|:---:|:---:|
| *B3* | *5* | *16* |

Loan No: 7404-0048                                                                Data ID: 178

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna          Form 3005   1/01      (Page 6 of 16 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3 | 6 | 16 |

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna        Form 3005   1/01      *(Page 7 of 16 Pages)*

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3 | 7 | 16 |

7.  Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.   If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application.  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

| EXHIBIT | PAGE | OF |
|---------|------|----|
| B3 | 8 | 16 |

Loan No: 7404-0048                                                    Data ID: 178

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3005   1/01        (Page 9 of 16 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3      | 9    | 16  |

Loan No: 7404-0048                                                          Data ID: 178

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                Form 3005   1/01        *(Page 10 of 16 Pages)*

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3 | 10 | 16 |

Loan No: 7404-0048                                                    Data ID:  178

12.  Borrower Not Released; Forbearance By Lender Not a Waiver.  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14.  Loan Charges.  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note).  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                Form 3005  1/01        (Page 11 of 16 Pages)

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3 | 11 | 16 |

Loan No: 7404-0048    Data ID: 178

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna          Form 3005   1/01      *(Page 12 of 16 Pages)*

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3 | 12 | 16 |

Loan No: 7404-0048                                                    Data ID: 178

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna               Form 3005   1/01        *(Page 13 of 16 Pages)*

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3      | 13   | 16  |

Loan No: 7404-0048                                                    Data ID: 178

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Following Borrower's breach of any covenant or agreement in this Security Instrument, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna              Form 3005  1/01      *(Page 14 of 16 Pages)*

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3      | 14   | 16  |

Loan No: 7404-0048                                                    Data ID: 178

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3005  1/01    *(Page 15 of 16 Pages)*

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3 | 15 | 16 |

Loan No: 7404-0048                                              Data ID: 178

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

..........................................................................(Seal)
RICHARD A. CONNORS ---Borrower

_____  [Space Below This Line For Acknowledgment]  _____
State of  CALIFORNIA                                §
County of  SAN DIEGO                              §

On _____, 20____, before me, _____, a Notary Public,
personally appeared
RICHARD A. CONNORS
☐ personally known to me
OR
☐ proved to me on the basis of satisfactory evidence

to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
                                                            Notary Public

[Seal]

My commission expires:_____    _____
                                                                            (Printed Name)

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
Modified by Middleberg, Riddle & Gianna           Form 3005   1/01      *(Page 16 of 16 Pages)*

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B3 | 16 | 16 |



**Recording Requested By**
**When Recorded Mail To**

Cal-Western Reconveyance Corp.
P.O. Box 22004
525 East Main Street
El Cajon  CA  92022-9004

CERTIFIED BY FIRST AMERICAN TITLE
INSURANCE COMPANY TO BE A COPY
OF THE DOCUMENT RECORDED ON 03/11/2008
AS INSTRUMENT NO. 2008-0129130
IN BOOK                        PAGE
OFFICIAL RECORDS OF  SAN DIEGO

Trustee Sale No. 1138196-15

_Space Above This Line For Recorder's Use_

Loan No. XXXXXX3359  Ref: CONNORS, RICHARD

## NOTICE OF DEFAULT

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).  This amount is $17,666.75 as of March 03, 2008, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE**
**FIRST BOSTON HEAT 2005-2**
**C/O Cal-Western Reconveyance Corporation**
**P.O. Box 22004**
**525 East Main Street**
**El Cajon  CA  92022-9004**
**(619)590-9200**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

| EXHIBIT | PAGE | OF |
|---------|------|----|
| B | 1 | 2  Page 1 of 2 |

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTICE IS HEREBY GIVEN:

CAL-WESTERN RECONVEYANCE CORPORATION is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary

under a deed of trust dated November 19, 2004 executed by

RICHARD A CONNORS, AN UNMARRIED MAN
    as trustor, to secure certain obligations in favor of

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR HOME LOAN CORPORATION DBA EXPANDED MORTGAGE CREDIT as beneficiary

recorded as document 2004-1127365 on November 30, 2004 in book XX page XXX official records in the office of County Recorder of SAN DIEGO
County, California, describing land therein as:

COMPLETELY DESCRIBED IN SAID DEED OF TRUST

said obligations including a promissory note for the principal sum of $500,000.00 that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Failure to pay the monthly payment due December 1, 2007 of principal and interest and subsequent installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary pursuant to the terms and conditions of said deed of trust.

That by reason thereof the present beneficiary under such Deed of Trust has deposited with said trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

T.S. 1138196-15

Dated:     March 11, 2008          CAL-WESTERN RECONVEYANCE CORPORATION

                                   Signature By _____

01/03/2007 rev.                                                    Nodca.doc Page 2 of 2

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| B | 2 | 2 |

REQUEST FOR VALIDATION AND INFORMATION TO VALIDATE ALLEGED
DEBT

NOTICE OF FAIR DEBT COLLECTION PRACTICES ACT
CALIFORNIA CIVIL CODE SECTION 1788-1788.3

January 12, 2008

RICHARD A. CONNORS
c/o Daniel-Mark: Gough, Notary Public
Oceanside, California State
united States of America

America's Servicing Company
PO BOX 10388
DES MOINES, IA 50306-0388
(866) 430-0675 Customer Service


REQUEST FOR VALIDATION AND VERIFICATION OF ALLEGED DEBT

In Re: 106 Loan Number: 1205113359
        Original Loan No: 7404-0048
        Borrower: RICHARD A. CONNORS, AN UNMARRIED MAN

Dear America's Servicing Company ,

Greetings,

It has come to my attention that the alleged mortgage DEBT, related to "106 Loan
Number: 1205113359" and allegedly serviced by your company, may not be valid.
Therefore, I hereby demand verification of the alleged DEBT based on your notice dated
December 17, 2007.

1.  Please obtain and provide, under affidavit, the name and address of the original
    creditor.

2.  Please obtain and provide, under affidavit, the name and address of the current
    creditor.

3.  Please obtain and provide, under affidavit, the name and address of the actual note
    holder of the original promissory note and deed of trust to confirm the legal status
    and standing of the holder of the original promissory note.

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| C5 | 2 | 3 |

CERTIFIED MAIL # __/ 0220 0000 6009 8751

Your office must provide this information in writing with particularity and specificity.
Your must send this information to the following, and no other, party and location:

RICHARD A. CONNORS
c/o Daniel-Mark: Gough, Notary Public
Oceanside, California State
united States of America

If you do not or are not able to provide the above information by the date of January 28th,
2008, you and I agree there is no valid debt owed to you or anyone else.

Thank you.

Sincerely,

By: Richard-Arthur: Connors, Authorized Representative
All rights expressly reserved

| EXHIBIT | PAGE | OF |
|---------|------|-----|
| C5 | 3 | 3 |



**IMPORTANT INFORMATION
ENCLOSED**

7104 1994 1410 1612 1516

June 13, 2008

Trustee Sale No. 1138196-15 1        CWR 06100744 030
RICHARD CONNORS
402 PASO DEL NORTE
ESCONDIDO  CA  92026

Pursuant to the requirements contained in section 2924b of the Civil Code of the State of California, we enclose
a copy of the Notice of Trustee's Sale in an envelope and with postage prepaid.

You will please observe that this copy of the Notice of Trustee's Sale is mailed within the statutory time limit.

Thank you.

CAL-WESTERN RECONVEYANCE CORPORATION

Enclosure

RECORDING REQUESTED BY
And When Recorded Mail To:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON  CA  92022-9004

Trustee Sale No. **1138196-15**            Space Above This Line For Recorder's Use

# NOTICE OF TRUSTEE'S SALE

APN: **187-500-21-00**      TRA:
LOAN NO: **XXXXXX3359**
REF: **CONNORS, RICHARD**
      **UNVER**

## IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED **November 19, 2004**.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER

On **July 03, 2008**, at **10:00am**, **CAL-WESTERN RECONVEYANCE CORPORATION**, as duly appointed trustee under and pursuant to Deed of Trust recorded **November 30, 2004**, as Inst. No. **2004-1127365**, in book **XX**, page **XXX**, of Official Records in the office of the County Recorder of **SAN DIEGO** County, State of **CALIFORNIA** executed by:

### RICHARD A CONNORS, AN UNMARRIED MAN

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, SAVINGS ASSOCIATION, OR SAVINGS BANK **SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:**

**AT THE ENTRANCE TO THE EAST COUNTY REGIONAL CENTER BY STATUE, 250 E. MAIN STREET EL CAJON CALIFORNIA**

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as:

**COMPLETELY DESCRIBED IN SAID DEED OF TRUST**

NOS.DOC                          Rev. 02/08/2007                          Page 1 of 2

## NOTICE OF TRUSTEE'S SALE

T.S. No: 1138196-15

The street address and other common designation, if any, of the real property described above is purported to be:
**402 PASEO DEL NORTE**
**ESCONDIDO CA 92026**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to pay the remaining principal sums of the note(s) secured by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: **$516,503.76**.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

FOR SALES INFORMATION: Mon – Fri 9:00am to 4:00pm **(619)590-1221**
**CAL-WESTERN RECONVEYANCE CORPORATION**
**525 EAST MAIN STREET**
**P.O. BOX 22004**
**EL CAJON CA 92022-9004**

Dated: **June 12, 2008**

By:      **S/Authorized Signature**
          Authorized Signature

CERTIFICATE OF SERVICE

   IT IS HEREBY CERTIFIED that on July 3, 2008 the   A First Amended

Complaint  of Plaintiff RICHARD CONNORS with exhibits, was filed electronically

with the clerk of the court using the CM/ECF system which will automatically send e-

mail notice of filing to the following counsel of record.Additionally as no Defendant has

yet appeared they were served with the documents via Knox attorney service and/or via

DHL pursuant to the requirements for service of an initial pleading


Dated: July 3, 2008                         Janis L. Turner ALC

                                            By_____-S-_____
                                            Janis L. Turner, Esq.
                                            (Cal Bar No 079217)
                                            Attorney for Plaintiff
                                            RICHARD CONNORS