1  EDWARD D. VOGEL, Cal. Bar No. 110081
   evogel@sheppardmullin.com
2  J. BARRETT MARUM, Cal. Bar No. 228628
   bmarum@sheppardmullin.com
3  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
       A Limited Liability Partnership
4      Including Professional Corporations
   501 West Broadway, 19th Floor
5  San Diego, California  92101-3598
   Telephone:     619-338-6500
6  Facsimile:     619-234-3815

7  Attorneys for Defendants
   AMERICA'S SERVICING COMPANY
8  and U.S. BANK, N.A. as trustee for CREDIT
   SUISSE FIRST BOSTON HEAT-2005-2

9

10

11                  UNITED STATES DISTRICT COURT

12               SOUTHERN DISTRICT OF CALIFORNIA

13

14  RICHARD A. CONNORS, an individual,        Case No. 08 CV 1134 L LSP

15                 Plaintiff,                 **AMERICA'S SERVICING COMPANY'S**
                                              **AND U.S. BANK, N.A.'S OPPOSITION TO**
16          v.                                **RICHARD A. CONNORS' MOTION FOR**
                                              **ISSUANCE OF PRELIMINARY**
17  HOME LOAN CORP. dba EXPANDED              **INJUNCTION**
    MORTGAGE CREDIT, a Texas Corp.,
18  MORTGAGE ELECTRONIC                       The Hon. M. James Lorenz
    REGISTRATION SYSTEMS (MERS) a
19  Delaware Corp., U.S. BANK NATIONAL        Date:      August 22, 2008
    ASSOCIATION, as trustee for CREDIT        Time:      9:30 a.m.
20  SUISSE FIRST BOSTON HEAT-2005-2,          Crtrm.:    14
    AMERICA'S SERVICING COMPANY, CAL
21  WESTERN RECONVEYANCE CORP., a
    California Corporation.,
22
                   Defendants.
23

24

25

26

27

28

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

Defendants America's Servicing Company ("ASC") and U.S. Bank, N.A. as trustee for Credit Suisse First Boston Heat-2005-2 ("U.S. Bank") hereby oppose Plaintiff Richard A. Connors' ("Plaintiff") Motion for Issuance of Preliminary Injunction as follows:

## I.

## <u>INTRODUCTION</u>

Plaintiff seeks a preliminary injunction to block the foreclosure sale of the real property located at 402 Paseo del Norte, Escondido, California (the "Property"). Plaintiff bases his preliminary injunction request on alleged technical violations of the Real Estate Settlement Procedures Act ("RESPA") and the Fair Debt Collections Practices Act ("FDCPA"). Plaintiff, however, cannot prove that he is likely to succeed on the merits of his claims and indeed, both fail as a matter of law for the reasons discussed below. Moreover, neither RESPA nor the FDCPA supports the type of equitable relief Plaintiff seeks. As a result, his motion for a preliminary injunction must be denied.

Most telling about Plaintiff's motion, however, is the fact that he <u>admits</u> that he defaulted on his loan payments in "late 2007." (Declaration of Richard A. Connors "Connors Decl." ¶ 11.) Plaintiff's admitted default gave the trustee under the deed of trust securing the note the <u>absolute</u> right to commence foreclosure proceedings. Plaintiff, through this lawsuit and this motion, nevertheless seeks to bar those proceedings, proceedings that are solely attributable to his failure to make his monthly mortgage payments. Plaintiff cannot escape the agreed upon and expected consequences of his defaults by hiding behind some claimed (but non-existent) notice discrepancies.

Plaintiff's alleged causes of action do not support injunctive relief. First, Plaintiff received all of the notices to which he was entitled under RESPA and, even if he had not, a RESPA violation has no effect whatsoever on the validity or enforceability of a note or deed of trust. Second, ASC is not a debt collector as that term is used in the FDCPA and thus, did not owe him any duties pursuant to it. Moreover, even though it owed Plaintiff no duties under the FDCPA, ASC nevertheless responded to Plaintiff's request for validation of his debt and provided

-2-

1    him all of the information required by the FDCPA.  Finally, even if Plaintiff could show that he

2    was likely to succeed on the merits of his claims, neither RESPA nor the FDCPA authorizes

3    equitable relief and thus neither can support his request for injunctive relief.

4        Accordingly, the Court should reject Plaintiff's attempt to seize upon alleged

5    technical violations of RESPA and the FDCPA to avoid the consequences of his admitted failure

6    to make his monthly mortgage payments.  The Court should deny Plaintiff's motion for a

7    preliminary injunction.

8    **II.**

9    **LEGAL STANDARD**

10        A party moving for preliminary injunction must show that a legal remedy is

11    inadequate, meaning that the moving party is faced with an immediate and irreparable injury for

12    which the moving party cannot be compensated with money damages.  *See Dymo Industries, Inc.*

13    *v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964).  "[A] preliminary injunction should

14    issue...upon a clear showing of either (1) probable success on the merits and possible irreparable

15    injury, or (2) sufficiently serious questions going to the merits to make them fair grounds for

16    litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary

17    relief."  *Aguirre v. Chula Vista Sanitary Service & Sani-Tainer, Inc.*, 542 F.2d 779, 781 (9th Cir.

18    1976) (*citing Gresham v. Chambers*, 501 F.2d 687, 691 (2nd Cir. 1974)); *Walczak v. EPL*

19    *Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999).

20        Thus, the standard for a preliminary injunction balances the moving party's

21    likelihood of success against the relative hardship to the parties.  *See Sun Microsystems, Inc. v.*

22    *Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999).  "If the harm that may occur to the [moving

23    party] is sufficiently serious, it is only necessary that there be a fair chance of success on the

24    merits."  *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 526 F.2d 86, 88

25    (9th Cir. 1975).

26        This does not mean, however, that a party seeking a preliminary injunction can

27    prevail solely upon a showing that irreparable harm will result absent an injunction.  Instead, to

28    prevail on a preliminary injunction request, the party seeking the injunction <u>must</u> demonstrate at

least some possibility of success on the merits of his claims. *See Aguirre*, 542 F.2d at 781 (requiring a clear showing of at least some possibility of success on the merits before injunctive relief will issue). If a movant will not prevail on the merits of his claims, he may not obtain a preliminary injunction – no matter the harm that may result. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 417 (4th Cir. 1999) ("[W]here it is legally impossible for a plaintiff to succeed on the merits of its underlying claim, the district court may not grant the requested injunction, no matter how severe or irreparable an injury the plaintiff may otherwise suffer.") The moving party's burden includes demonstrating a likelihood of prevailing on any affirmative defenses as well as its case in chief. *See Dr. Seuss Enters., L.P. v. Penguin Book USA*, *Inc.*, 924 F. Supp. 1559, 1562 (S.D. Cal. 1996) (Jones, J.) ("The plaintiff's burden of showing a likelihood of success on the merits includes the burden of showing a likelihood that it would prevail against any affirmative defense raised by the defendant."); *accord A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 n. 3 (9th Cir. 2001).

**III.**

**PLAINTIFF CANNOT SHOW THAT HE IS LIKELY TO PREVAIL ON THE MERITS OF HIS CLAIMS OR THAT THEY ENTITLE HIM TO INJUNCTIVE RELIEF**

Stripped to their essentials, Plaintiff's claims supporting his request for injunctive relief are simple. According to Plaintiff, ASC's and/or U.S. Bank's alleged failure to provide him with notice of the transfer of his loan's servicing and purported refusal to respond properly to his inquiries under the FDCPA entitles him to a preliminary injunction. Plaintiff is mistaken.

A.     Plaintiff's RESPA Claim Fails Because he Received the Required RESPA Notice

12 U.S.C. § 26005(b) & (c) provide collectively that transferors and transferees of loan servicing duties must provide notice of the transfer to the borrower. Other portions of section 2605 and the regulations promulgated pursuant to it make it clear that the purpose of this notice is to ensure that the borrower knows where to send his or her loan payments. 12 U.S.C. § 2605(d) (providing a sixty-day period after the effective date of servicing transfer during which the borrower may not be charged a late fee if he timely sends his loan payments to the old servicer instead of the new servicer); 24 C.F.R. § 3500.21(d) (stating that certain "transfers are not

considered an assignment, sale or transfer of mortgage loan servicing for purposes of [the notice] requirement if there is no change in the payee, address to which payment must be delivered, account number, or amount of payment due").  It is unclear from Plaintiff's motion whether he challenges the transfer of his loan's servicing to ASC and/or U.S. Bank or the transfer of that servicing from ASC and/or U.S. Bank.  In either case, Plaintiff cannot meet his burden of showing that he is likely to prevail on the merits of his RESPA claim.

With respect to the transfer of servicing to ASC, ASC provided Plaintiff with the notice required by RESPA on March 1, 2005.  (Declaration of J. Barrett Marum "Marum Decl.," Ex. C); 12 U.S.C. § 2605(c).  Plaintiff also declared, under oath, that it was ASC "to whom I had always sent my loan payments."  (Connors Decl. ¶ 12.) [1]  ASC thus remains the servicer for Plaintiff's loan and, as such, RESPA required no further notices to Plaintiff.  (Id.); 12 U.S.C. § 2605(b).  Since ASC continues to service Plaintiff's loan, no servicing transfer to or from U.S. Bank ever occurred such that RESPA would have required U.S. Bank to provide Plaintiff with any notices.  12 U.S.C. § 2605(b) & (c).

Although Plaintiff suggests that both ASC and U.S. Bank were servicers such that transfers to or from U.S. Bank would have required RESPA notice, Plaintiff's tortured argument is undercut by the very language of the statute he cites.  A servicer is "the person responsible for servicing of a loan[.]"  12 U.S.C. § 2605(I)(2).  "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan[.]"  12 U.S.C. § 2605(I)(3) (emphasis supplied).  Nowhere does section 2605 suggest that there can be two servicers that are both bound by its notice requirements at the same time.  Instead, it refers consistently to the servicer in the singular and as the person who receives payments from the borrower.  In this case, that is ASC.  (Connors Decl. ¶ 12.)  This interpretation fits with the clear intent of the notice provisions contained in section 2605(b) & (c) to ensure that the borrower knows where to send his

---

[1]    Plaintiff has never denied receiving ASC's March 1, 2005 notice.  When asked by the Court at the July 2, 2008 hearing whether or not the servicing entity had ever changed, Plaintiff testified under oath that he had several different loans on different homes over the years "and I can't say for a fact if this one has been reassigned or if I was given notice on this particular one."  (Marum Decl., Ex. A at 24:25-25:8.)

1    or her monthly payments as discussed above.  Here, there was never any confusion as Plaintiff

2    "always" sent his loan payments to ASC.  (Connors Decl. ¶ 12); *See also* 24 C.F.R. § 3500.21(d)

3    (providing that transfers between master servicers (the person who owns the servicing rights)

4    where the subservicer (a person who does not own the right to service the loan but does so on the

5    master servicer's behalf) remains the same need not be accompanied by RESPA notice if the

6    payee, address to which payment is made, account number and amount of payment remain the

7    same.)  Simply put, RESPA does not require notice to a borrower when the owner of his note

8    and/or the beneficiary of his deed of trust changes.[2]

9            Plaintiff also apparently contends that ASC failed to properly respond to his

10   qualified written request pursuant to 12 U.S.C. § 2605(e).  Plaintiff, however, has not submitted

11   any evidence that he made such a request.  (*See generally* Connors Decl.)  To the extent Plaintiff

12   claims that his January 2008 letter to ASC constitutes such a request, that claim is belied by the

13   title Plaintiff applied to his letter:

14           REQUEST FOR VALIDATION AND INFORMATION TO VALIDATE
             ALLEGED DEBT
15           NOTICE OF FAIR DEBT COLLECTIONS PRACTICES ACT
             CALIFORNIA CIVIL CODE SECTION 1788-1788.3
16

17   (Connors Decl., Ex. B.)  In any event, ASC responded appropriately to Plaintiff's request as

18   discussed below.[3]

19           Plaintiff received all of the notice to which he was entitled pursuant to RESPA and

20   the loan documents.  His RESPA claim fails as a result as does his claim for injunctive relief based

21   thereon.

22   _____

23   [2]    The note and deed of trust also do not require notice to Plaintiff before their transfer.  The
            deed of trust provides that "[t]he Note or a partial interest in the Note (together with this
24          Security Instrument) can be sold one or more times without prior notice to Borrower."
            (Connors Decl., Ex. A, Deed of Trust at ¶ 20) (emphasis supplied).

25   [3]    Even if Plaintiff's January 2008 letter were construed as a request pursuant to section
            2605(e), it requests information regarding the ownership of his loan, not its servicing.  12
26          U.S.C. § 2605(e) ("If any servicer . . . receives a qualified written request from the
            borrower . . . for information relating to the servicing of such loan") (emphasis supplied).
27          It is not at all clear how a request for validation of a debt pursuant to the FDCPA has
            anything to do with the mechanics of the loan servicing.

28

1    B.    Plaintiff's FDCPA Claim is Meritless Because the FDCPA does not Apply to ASC

2              Section 1692g of the FDCPA requires that a "debt collector," upon the debtor's

3    request, provide the debtor with validation of his debt. 15 U.S.C. § 1692g. Plaintiff contends that

4    ASC violated this section by failing to properly respond to Plaintiff's request.[4] Once again,

5    Plaintiff's claim fails as a matter of law.

6              The FDCPA by its own terms applies only to "debt collectors." 15 U.S.C.

7    §§ 1692a(6); 1692g. ASC is not a "debt collector" as that term is used in the FDCPA because

8    ASC began servicing Plaintiff's debt at a time it was not in default. (Marum Decl., Ex. C).; 15

9    U.S.C. § 1694a(4) & (a)(6); *Federal Trade Commission v. Check Investors, Inc.*, 502 F.3d 159,

10   173-74 (3rd Cir. 2007) (holding that an entity that acquires debt when it is not in default is a

11   "creditor" under the FDCPA, not a "debt collector.") Since it is not a debt collector under the

12   FDCPA, ASC was not required to comply with its terms. *Perry v. Stewart Title Co.*, 756 F.2d

13   1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that

14   debt collector does not include the consumer's creditors, a mortgage servicing company, or an

15   assignee of a debt, as long as the debt was not in default at the time it was assigned.") (emphasis

16   supplied); *Bailey v. Security National Servicing Corp.*, 154 F.3d 384, 387 (7th Cir. 1998) (holding

17   that a servicing company attempting to collect on debt owed pursuant to a forbearance agreement

18   was not a debt collector subject to the FDCPA's "hyper-technical requirements"). Plaintiff's claim

19   against ASC premised on the FDCPA therefore fails as a matter of law and cannot serve to support

20   his preliminary injunction request.

21             In any event, ASC, through the law firm of Pite Duncan, LLP, responded to

22   Plaintiff's request and provided him with all of the information (and more) required by section

23   1692g. (Connors Decl., Ex. C.) Section 1692g provides that a debt collector, in response to a

24   debtor's inquiry "shall cease collection of the debt . . . until the debt collector obtains verification

25   of the debt or a copy of a judgment, **or** the name and address of the original creditor, and a copy of

---

26   [4]    Although Plaintiff has pled this claim against both ASC and U.S. Bank, the alleged

27         conduct upon which his claim is founded, ASC's purported failure to properly respond to
         his request for validation of his debt, is attributable solely to ASC.

28

1   such verification or judgment, **or** name and address of the original creditor, is mailed to the

2   consumer by the debt collector."  15 U.S.C. § 1692g(b) (emphasis supplied).  The Pite Duncan

3   letter easily meets these requirements, providing both validation of the debt and relevant names

4   and addresses.  (Connors Decl., Ex. C) (informing Plaintiff of the name and address of the

5   originating lender, the name and address of the current servicer and beneficiary and attaching the

6   note, deed of trust and a statement regarding the note's unpaid principal balance).  Accordingly,

7   Plaintiff's FDCPA claim would not support his request for a preliminary injunction even if the

8   FDCPA governed ASC's conduct, which it does not.

9   C.        RESPA and the FDCPA do not Entitle a Private Plaintiff to Equitable Relief

10          Plaintiff's preliminary injunction motion also fails because the statutes upon which

11  he has based his motion do not entitle him to the injunctive relief he requests.  Even if he were to

12  prevail on his RESPA and FDCPA claims, Plaintiff would not be entitled to an order blocking the

13  Property's foreclosure sale.

14          RESPA expressly provides that "[n]othing in this chapter shall affect the validity or

15  enforceability of any sale or contract for the sale of real property or any loan, loan agreement,

16  mortgage, or lien made or arising in connection with a federally related mortgage loan."  12 U.S.C.

17  § 2615.  Although published authority interpreting this section of RESPA is scant, several

18  unpublished cases confirm that RESPA violations may not be used as a defense against

19  enforceability of a lien or a foreclosure action.  *See In re Klinger*, 2007 WL 1795877 * 5 (Bankr.

20  D. Conn. 2007) ("Moreover, failure to comply with RESPA does not adversely affect the validity

21  or enforceability of the Note."); *Security Pacific National Bank v. Robertson*, 1997 WL 561235 *

22  (Conn. Sup. Ct. August 28, 1997) (RESPA violations not a defense to a foreclosure action).

23          Section 2605 of RESPA also does not provide private litigants with the ability to

24  seek equitable relief for violations of it.  12 U.S.C. § 2605(f).  In construing an analogous section

25  of RESPA, courts have held that Congresses' decision to omit equitable relief indicated an intent

26  to bar private litigants from obtaining such relief:  *See Mullinax v. Radian Guar. Inc.*, 199 F.

27  Supp.2d 311, 333 (M.D.N.C. 2002) ("The wording of the subsections authorizing RESPA

28  remedies suggests that private injunctions are not available.")  And, as aptly noted by the *Mullinax*

1   court, when a statute such as RESPA "'expressly provides' a specific set of remedies, the Supreme

2   Court has cautioned that courts must 'be chary of reading others into it." *Mullinax*, 199 F.Supp.2d

3   at 334 *citing Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979).  Section

4   2605 does not provide for equitable relief and the Court should decline to read a remedy into the

5   statute that Congress saw fit to leave out.

6          The FDCPA also does not authorize injunctive relief for violations of its

7   provisions.  *See* 15 U.S.C. § 1692k (listing damages and counsel fees as remedies, but not

8   injunctive relief).  While the Ninth Circuit does not appear to have ruled on this issue, many courts

9   have found equitable relief unavailable under the FDCPA, at least with respect to private actions.

10  *See Weiss v. Regal Collections, Inc.*, 385 F.3d 337, 342 (3rd Cir. 2004); *Crawford v. Equifax*

11  *Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000) (noting that all private actions under the

12  FDCPA are for damages); *Bolin v. Sears Roebuck & Co.*, 231 F.3d 970, 977 n. 39 (5th Cir. 2000)

13  ("[A]lthough this circuit has not definitively ruled on the issue, courts uniformly hold that the

14  FDCPA does not authorize equitable relief."); *Sibley v. Fulton DeKalb Collection Service*, 677

15  F.2d 830, 834 (11th Cir. 1982) (equitable relief is not available to an individual under the

16  FDCPA.).  At least two lower courts from within the Ninth Circuit agree.  *Palmer v. Stassinos*,

17  233 F.R.D. 546, 552 (N.D. Cal. 2006) ("the FDCPA does not allow private plaintiffs to obtain

18  equitable relief"); *Taylor v. Quall*, 471 F.Supp.2d 1053, 1059 (C.D. Cal. 2007) (striking

19  allegations seeking injunctive relief pursuant to the FDCPA from complaint).  Since equitable

20  relief is not available under the FDCPA, it cannot support Plaintiff's request for a preliminary

21  injunction.

22                                    **IV.**

23  **PLAINTIFF HAS NOT DEMONSTRATED THE ABILITY TO POST AN ADEQUATE**

24                                    **BOND**

25          The median home value in Plaintiff's zip code has declined by nearly 25% in the

26  last year alone.  (Marum Decl., Ex. B.)  Moreover, it is a widely known fact that San Diego home

27  prices have declined precipitously since their peak in mid-2005.  Plaintiff purchased his home

28

1   towards the end of 2003.  (Connors Decl. ¶ 2.)  Depending on the amount remaining on his second

2   mortgage, Plaintiff's home may very well be worth less than he currently owes his various lenders.

3          In the event the Court elects to grant Plaintiff's request for a preliminary injunction

4   the Court should also require Plaintiff to post a bond in a sufficient amount to protect his lenders

5   against further declines in the value of the Property.  Federal Rule of Civil Procedure 65 requires

6   that a party obtaining a preliminary injunction post a bond to protect the non-moving party's

7   interests.  FED. R. CIV. PROC. 65(c) ("The court may issue a preliminary injunction or a temporary

8   restraining order only if the movant gives security in an amount that the court considers proper to

9   pay the costs and damages sustained by any party found to have been wrongfully enjoined or

10  restrained.")  There is a very real and substantial risk that if the foreclosure sale of the Property is

11  enjoined the value obtained at that foreclosure sale (if Plaintiff does not ultimately prevail on

12  claims entitling him to injunctive relief) will be less than the amount Plaintiff owes his lenders.

13  Thus, if the Court decides to grant Plaintiff's request despite all of its infirmities outlined above,

14  the Court should require Plaintiff to post a substantial bond.

## V.

## CONCLUSION

17         For the foregoing reasons, ASC and U.S. Bank respectfully request that the Court

18  deny Plaintiff's request for a preliminary injunction.

19  Dated:  August 20, 2008

20              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

22              By      _____/s/   J. Barrett Marum_____

23                          Edward D. Vogel
                            J. Barrett Marum
24                  Attorneys for America's Servicing Company

1  EDWARD D. VOGEL, Cal. Bar No. 110081
   J. BARRETT MARUM, Cal. Bar No. 228628
2  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
3      Including Professional Corporations
   501 West Broadway, 19th Floor
4  San Diego, California  92101-3598
   Telephone:     619-338-6500
5  Facsimile:      619-234-3815
   evogel@sheppardmullin.com
6  bmarum@sheppardmullin.com

7

8  Attorneys for Defendants America's Servicing
   Company and U.S. Bank, N.A. as trustee for Credit
9  Suisse First Boston Heat-2005-2

10

11                UNITED STATES DISTRICT COURT

12              SOUTHERN DISTRICT OF CALIFORNIA

13

14  RICHARD A. CONNORS, an individual,        Case No. 3:08-cv-01134-L-LSP

15              Plaintiff,                     DECLARATION OF J. BARRETT MARUM
                                               IN SUPPORT OF AMERICA'S SERVICING
16         v.                                  COMPANY AND U.S. BANK, N.A. AS
                                               TRUSTEE FOR CREDIT SUISSE FIRST
17  HOME LOAN CORP. dba EXPANDED               BOSTON HEAT-2005-2'S OPPOSITION TO
    MORTGAGE CREDIT, a Texas Corp.,           PLAINTIFF'S MOTION FOR ISSUANCE OF
18  MORTGAGE ELECTRONIC                        PRELIMINARY INJUNCTION
    REGISTRATION SYSTEMS (MERS) a
19  Delaware Corp., U.S. BANK NATIONAL         Date:          August 22, 2008
    ASSOCIATION as trustee for CREDIT          Time:          9:30 a.m.
20  SUISSE FIRST BOSTON HEAT-2005-2,           Crtrm:         14
    AMERICA'S SERVICING COMPANY, CAL
21  WESTERN RECONVEYANCE CORP., a              The Hon. M. James Lorenz
    California Corp.,
22
                                               [Complaint Filed:  6/24/08
23              Defendants.

24

25

26

27

28

1    I, J. Barrett Marum, declare as follows:

2        1.        I am an attorney licensed to practice law in the State of California and am

3    admitted to practice before this Court.  I am an associate in the law firm of Sheppard, Mullin,

4    Richter & Hampton, LLP, counsel of record for Defendants America's Servicing Company

5    ("ASC") and U.S. Bank, N.A. as trustee for Credit Suisse First Boston Heat-2005-2.  I have

6    personal knowledge of the facts stated herein and if called as a witness to testify thereto, I could

7    competently do so.

8        2.        Attached as **Exhibit A** is a true and correct copy of the Reporter's

9    Transcript of the July 2, 2008 hearing in this case.

10        3.        On August 19, 2008 I accessed the Union Tribune's website at

11    www.signonsandiego.com to obtain information regarding changes in median home prices

12    throughout San Diego County over the last year.  Attached as **Exhibit B** is a true and correct copy

13    of a spreadsheet containing data that I obtained from the Union Tribune's website on median home

14    prices for various zip codes in North County San Diego in June 2008.  (The specific source

15    uniform resource locator is indicated at the bottom of the chart.)  The chart compares median

16    home prices in the month of June 2008 to median home prices in the month of June 2007.  As

17    shown on the chart, the median home price for resale single-family homes in Plaintiff's zip code

18    decreased by 23.8% from the previous year.

19        4.        Attached as **Exhibit C** is a true and correct copy of a March 1, 2005 letter

20    from ASC to Plaintiff notifying Plaintiff that ASC was assuming servicing duties for his loan.  I

21    obtained this letter from ASC's loan file for Plaintiff's loan and I am informed and believe that it is

22    a document maintained by ASC in the ordinary course of its business.[1]

23

24

25

26

[1]    ASC's and U.S. Bank's counsel has attempted to obtain a declaration from ASC regarding
its March 1, 2005 servicing transfer letter to Plaintiff but as of the deadline for filing the
opposition to Plaintiff's motion had been unable to do so.  I anticipate that I will be able to
obtain such a declaration in advance of the hearing on this matter and will submit that
declaration as soon possible.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on August 20, 2008 in San Diego, California.

s/J. Barrett Marum

_____

J. Barrett Marum

E-mail:  bmarum@sheppardmullin.com

# EXHIBIT A

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE M. JAMES LORENZ, JUDGE PRESIDING

_____
                                )
RICHARD A. CONNORS,             )
                                ) CASE NO. 08CV1134-MJL
            PLAINTIFF,          )
                                )
        -V-                     )
                                ) SAN DIEGO, CALIFORNIA
HOME LOAN CORP., ET AL,         ) JULY 2, 2008
                                ) 10:10 A.M.
            DEFENDANTS.         )
_____)


REPORTER'S TRANSCRIPT OF PROCEEDINGS




APPEARANCES:

FOR THE PLAINTIFF:          LAW OFFICES OF JANIS L. TURNER
                            BY:  JANIS L. TURNER, ESQ.
                            2515 CAMINO DEL RIO SOUTH
                            SUITE 242B
                            SAN DIEGO, CALIFORNIA 92101

FOR THE DEFENDANT           PITE DUNCAN LLP
CAL WESTERN RECONVEYANCE:   BY:  THOMAS N. ABBOTT, ESQ.
                            1820 E. FIRST STREET
                            SUITE 420
                            SANTA ANA, CALIFORNIA 92705

OFFICIAL REPORTER:          JEANNETTE N. HILL, C.S.R.
                            (619) 702-3905

JULY 2, 2008

EX. A
P. 04

2

1    <u>SAN DIEGO, CALIFORNIA; WEDNESDAY, JULY 2, 2008; 10:10 A.M.</u>

2        **DEPUTY CLERK:**  CALLING MATTER NUMBER 1, 08CV1134,

3    CONNORS VERSUS HOME LOAN CORP, ET AL, ON CALENDAR FOR MOTION

4    HEARING.

5        **THE COURT:**  GOOD MORNING.

6        **MR. ABBOTT:**  GOOD MORNING, YOUR HONOR.

7        **MS. TURNER:**  GOOD MORNING, YOUR HONOR.

8        **THE COURT:**  WE ARE HERE FOR A TEMPORARY RESTRAINING

9    ORDER REQUEST.  FIRST, I WANT TO ADDRESS SERVICE.

10        COUNSEL, YOU APPARENTLY RECEIVED SERVICE?

11        **MR. ABBOTT:**  NO.  I DON'T THINK I RECEIVED SERVICE,

12    YOUR HONOR.  WE BECAME AWARE OF THE APPLICATION.  IT WAS ON

13    LINE.  AND WE CAME HERE, BUT WE DIDN'T HAVE A COPY OF THE

14    EVIDENTIARY ATTACHMENTS TO THE MOTION OR ANYTHING LIKE THAT.

15    WE JUST WERE GOING TO DEAL WITH IT HERE THIS MORNING.

16        **THE COURT:**  WELL, MS. TURNER, THE PROBLEM -- LET'S

17    START WITH THE FIRST ISSUE AS FAR AS SERVICE.

18        I DON'T KNOW HOW MUCH PRACTICE YOU DO IN FEDERAL

19    COURT, BUT YOU CAN'T JUST SEND A TRO ELECTRONICALLY TO THE

20    CLERK'S OFFICE AND HOPE THAT PEOPLE WILL BE SERVED.  THE

21    PROBLEM IS THAT THE CLERK'S OFFICE DOES NOT HAVE THE ADDRESSES

22    AND THE SETUP FOR THE PURPOSE OF TAKING YOUR TRO AND THEN

23    SENDING NOTICE TO THE PARTIES.

24        THERE HAS TO BE FILINGS, FIRST.  AND SO THE PROBLEM

25    IS THAT -- I ASSUME YOU GOT IT SOME OTHER WAY, INITIALLY?

JULY 2, 2008

3

1          **MS. TURNER:** WELL, IF I MAY, YOUR HONOR. IF YOU WILL

2    NOTICE IN MY PAPERS, WHEN I CALLED YOUR CLERK'S OFFICE AND GOT

3    THE DATE, I EXPLAINED MY SERVICE ISSUES. AND SHE SAID, WELL,

4    IT'S SERVED ECF. I, THEREFORE -- WHEN I FILED AND SERVED MY

5    INITIAL COMPLAINT, ATTACHED TO MY INITIAL COMPLAINT WAS A

6    NOTICE OF INTENTION TO APPEAR HERE EX PARTE, WITH FURTHER

7    INFORMATION THAT ALL PLEADINGS PURSUANT TO THE DIRECTIONS

8    RECEIVED HERE WOULD BE AVAILABLE BY ECF AS OF JUNE 30, 2008.

9    I, THEREAFTER, HAVE PROOF THAT BOTH THE COMPLAINT AND THAT

10   NOTICE WERE SERVED BY MY AGENT FOR THE SERVICE OF PROCESS UPON

11   THE REGISTERED AGENTS FOR THE SERVICE OF PROCESS.

12          **THE COURT:** IS THERE A PROOF OF SERVICE?

13          **MS. TURNER:** IT'S ATTACHED TO THE EXHIBITS, YOUR

14   HONOR, THAT CAME INTO THE COURT.

15          **THE COURT:** WELL, I DON'T THINK THEY WERE.

16          **MS. TURNER:** IT SHOULD BE ATTACHED TO MY CERTIFICATE.

17          **THE COURT:** YES. A CERTIFICATE OF SERVICE IS HEREBY

18   CERTIFIED THAT ON JUNE 30, 2008, APPLICATION FOR TRO,

19   DECLARATION, ETC., POINTS AND AUTHORITIES, DECLARATION OF

20   COUNSEL REGARDING SERVICES FILED ELECTRONICALLY WITH THE CLERK

21   OF THE COURT USING THIS CM/ECF SYSTEM WHICH WILL AUTOMATICALLY

22   SEND EMAIL NOTICE TO THE COUNSEL OF RECORD.

23          UNFORTUNATELY, THAT IS NOT TRUE. THAT IS TRUE ONCE

24   THE CLERK HAS THE FILINGS AND ACTUALLY HAS THE PLEADINGS THAT

25   WOULD NORMALLY BE AN ANSWER OR SOMETHING. THEN THE HOME LOAN

JULY 2, 2008

4

1  CORP, ONCE THERE IS A RESPONSE, THEN THEY WOULD HAVE IT.  BUT,

2  UNFORTUNATELY, THIS DOESN'T DO IT.  I AM NOT NECESSARILY GOING

3  TO SAY THIS IS GOING TO HANG THINGS UP, BUT I AM TELLING YOU,

4  AS A PRACTICAL MATTER, IF YOU DO IT AGAIN YOU ARE GOING TO HAVE

5  TO SERVE THEM DIRECTLY, NOT THROUGH CM/ECF.

6         **MS. TURNER:**  IF YOUR HONOR WILL LOOK FURTHER, THERE

7  IS ALSO THE CERTIFICATION OF JANIS TURNER, WHICH IS REQUIRED

8  WHERE YOU ARE SEEKING RELIEF EX PARTE.  ATTACHED TO THAT

9  DOCUMENT SHOULD HAVE BEEN A PROOF OF SERVICE FROM --

10        **THE COURT:**  I AM SAYING HOW ARE THEY GOING TO GET IT

11 IF THEY HAVEN'T HAD AN INITIAL RESPONSE OR IT GOES TO THE

12 CLERK'S OFFICE?  EVEN IF YOU LIST THE ADDRESS OF THE PARTIES ON

13 A TRO -- EVEN IF YOU LIST THEM, THE CLERK'S OFFICE IS NOT GOING

14 TO SEND NOTICE TO THE PARTIES AT THIS INITIAL TIME.

15        **MS. TURNER:**  I DID NOT EXPECT THAT THEY WERE GOING

16 TO, YOUR HONOR.

17        **THE COURT:**  THEN HOW DID THEY GET SPECIFIC NOTICE OF

18 THE TRO?

19        COUNSEL, YOU GOT IT HOW, AGAIN?

20        **MR. ABBOTT:**  OUR CLIENT MENTIONED TO US THEY WERE

21 SERVED WITH A SUMMONS AND A COMPLAINT, NOT WITH THE TRO, AS FAR

22 AS I UNDERSTAND IT.  BUT THEY WERE AWARE THAT THERE WAS A TRO

23 SCHEDULED FOR TODAY.  I CALLED YESTERDAY TO CONFIRM THAT IT WAS

24 ON SCHEDULE BECAUSE IT DOESN'T APPEAR ON PACER IN THE DOCKET AS

25 BEING SCHEDULED HERE.

JULY 2, 2008

5

1    **THE COURT:** ANYWAY, YOUR CLIENT GOT NOTICE OF THE

2 SERVICE OF THE COMPLAINT AND SOMEHOW THEY FIGURED IT OUT THERE

3 WAS A TRO.

4    **MR. ABBOTT:** THIS IS SOMETHING THAT IS A HIGH-VOLUME

5 ISSUE FOR THEM SO THEY HAVE THEIR EYES PEELED ON VARIOUS THINGS

6 AND KNOW THAT SOMETHING MAY BE AFOOT AND WANT TO COVER IT, BUT

7 THAT DOESN'T MEAN THEY RECEIVED PROPER NOTICE OF IT.

8    **THE COURT:** WELL, I AM GOING TO MOVE ON AT THIS

9 POINT. I CAN ONLY TELL YOU THAT NOTICE TO APPEAR IS DEFECTIVE.

10 BUT NOTWITHSTANDING THAT, I DO -- AFTER REVIEWING THE

11 PAPERWORK, OBVIOUSLY, FORECLOSURE ON A RESIDENCE CONSTITUTES

12 IRREPARABLE HARM. THERE IS NO QUESTION THAT IRREPARABLE HARM,

13 AS FAR AS ONE OF THE TESTS IS CONCERNED, HAS BEEN MET. AND

14 ALSO THE BALANCE OF THE HARDSHIPS TIP STRONGLY IN FAVOR OF THE

15 PLAINTIFF. HOWEVER, THE THIRD ISSUE, THE LIKELIHOOD OF SUCCESS

16 ON THE MERITS OR THE SERIOUS QUESTIONS BASED ON THE PAPERS, I

17 NEED TO ADDRESS.

18    FIRST, I WANT TO ASK THE PLAINTIFF WHAT FEDERAL

19 STATUTE ARE YOU RELYING ON IN SEEKING THIS TRO? A TRO ALWAYS

20 HAS IT LAID OUT IN THE TRO WHAT LEGAL BASIS -- WHAT STATUTE

21 THEY ARE RELYING ON, AND THAT WAS NOT SPECIFICALLY LAID OUT IN

22 YOUR TRO LANGUAGE. I THINK WHAT YOU ARE DOING IS YOU HAVE

23 EXTRAPOLATED BASED ON THE COMPLAINT, BUT IT'S SUPPOSED TO BE IN

24 THE TRO. BUT BASED ON THAT, IN ANY CASE, WHAT SPECIFIC FEDERAL

25 STATUTE ARE YOU RELYING ON?

JULY 2, 2008

6

1          **MS. TURNER:** PRIMARILY, YOUR HONOR, THE FEDERAL

2    DECLARATORY RELIEF ACT, THAT MY CLIENT IS ENTITLED TO A

3    DECLARATION AS TO WHETHER THERE IS ACTUALLY A RIGHT.  WE ARE

4    NOT ARGUING HERE ABOUT OWED MONEY.  WHAT WE ARE ARGUING ABOUT

5    HERE IS IS THERE ACTUALLY A RIGHT OF FORECLOSURE.

6          AS CAN BE SEEN FROM MY PAPERS, MY CLIENT SENT

7    NUMEROUS LETTERS TO EVERYBODY.  NOBODY WOULD GIVE HIM ANY

8    INFORMATION AS TO WHY, HOW, WHO.  I BELIEVE THAT HE IS ENTITLED

9    TO THAT, TO SOMETHING THAT IS AS SERIOUS AS THE FORECLOSURE OF

10   HIS HOME.

11         AND IN ADDITION, AS I ALSO SAID IN MY PAPERS, I

12   REALIZED THIS HAD TO BE FILED RATHER QUICKLY.  AND I WILL BE

13   SEEKING THE COURT'S LEAVE TO FILE AN AMENDED COMPLAINT TO ADD A

14   CAUSE OF ACTION FOR VIOLATION OF THE FAIR DEBT COLLECTION

15   PRACTICES ACT.

16         **THE COURT:** LET ME BACK UP AGAIN.  WHAT CODE

17   PROVISION ARE YOU RELYING ON, AGAIN?

18         **MS. TURNER:** THE FEDERAL DECLARATORY RELIEF ACT.

19         **THE COURT:** WELL, WHAT YOU HAVE ALLEGED IN YOUR

20   COMPLAINT, AS I UNDERSTAND IT, YOU HAVE ALLEGED A TRUTH AND

21   LENDING ACT VIOLATION, UNDER 1640; YOU HAVE ALLEGED THE REAL

22   ESTATE SETTLEMENT PROCEDURE ACT FOR A CODE PROVISION UNDER

23   RESPA, AND YOU ALLEGED THE HOME OWNERSHIP EQUITY PROTECTION

24   ACT.

25         **MS. TURNER:** AND FOR PURPOSES OF THE TRO, BOTH

JULY 2, 2008

7

1    DECLARATORY RELIEF AND THE HOME EQUITY PROTECTION ACT.

2         **THE COURT:**  WHERE HAVE YOU ALLEGED IN THE HOME -- THE

3    HOME OWNERSHIP AND EQUITY PROTECTION ACT IS WHAT YOU ARE

4    RELYING ON?  HOEPA?

5         **MS. TURNER:**  YES.

6         **THE COURT:**  ANYTHING ELSE?

7         **MS. TURNER:**  AS I SAID, I WILL ALSO BE FILING AN

8    AMENDED COMPLAINT.

9         **THE COURT:**  WELL, LET ME WALK THROUGH AND MAYBE ASK

10   YOU ABOUT THE HOME OWNERSHIP AND EQUITY PROTECTION ACT.

11        IT APPEARS THAT BOTH THE TRUTH AND LENDING ACT AND

12   THE HOME OWNERSHIP AND EQUITY PROTECTION ACT -- IT APPEARS THAT

13   THOSE ARE TRANSACTIONS OF A CONSUMER NATURE -- OF A CONSUMER

14   LOAN RATHER THAN A MORTGAGE LOAN.  AND I DON'T ACTUALLY SEE HOW

15   THEY APPLY IN THIS CASE.

16        DO YOU HAVE ANY CASES?  THERE WAS NO CASES THAT WERE

17   PROVIDED WHERE THEY APPLY TO A MORTGAGE.  THAT IS DIFFERENT

18   THAN A CONSUMER LOAN, WHERE YOUR HOUSE IS PUT UP AS SECURITY

19   FOR A LOAN BUT IT HAS TO DO IN THE CONSUMER CONTEXT.  I DIDN'T

20   SEE ANY CASES.

21        **MS. TURNER:**  WELL, YOUR HONOR, I BELIEVE THAT GIVEN

22   WHERE WE WERE NOW WITH THE MORTGAGE CRISIS AND THE WAY

23   MORTGAGES WERE TREATED, IT BECAME NOTHING MORE THAN A CONSUMER

24   LOAN.

25        **THE COURT:**  BUT YOU ARE MAKING NEW LAW.  IS THAT WHAT

JULY 2, 2008

8

1    YOU ARE TRYING TO DO HERE?

2         **MS. TURNER:**  I HOPE NOT.

3         **THE COURT:**  I HAVE TO FOLLOW THE LAW.  I DON'T CREATE

4    IT.

5         **MS. TURNER:**  I HOPE I AM NOT MAKING NEW LAW, YOUR

6    HONOR.

7         **THE COURT:**  BUT YOU HAVEN'T SHOWN ANYTHING IN YOUR

8    TRO.  YOU HAVE SHOWN NOTHING AS TO THE REAL ESTATE SETTLEMENT

9    PROCEDURE -- I AM SORRY.  NOT THAT ONE.  THE OWNERSHIP AND

10   EQUITY PROTECTION.  THAT PARTICULAR PROVISION IS NOT APPLICABLE

11   TO THIS TRANSACTION AS FAR AS ANY LAW THAT I HAVE SEEN, AND YOU

12   HAVEN'T PROVIDED ME WITH ANY.

13        **MS. TURNER:**  I BELIEVE, YOUR HONOR, THAT WE ARE IN A

14   VERY NEW AREA.  I BELIEVE THAT GIVEN WHERE WE ARE UNDER BOTH --

15   THE TRUTH IN LENDING ACT, THEY HAD AN OBLIGATION WHICH FLOWS TO

16   ALL PARTIES HERE, TO TELL MY CLIENT WHAT WAS ACTUALLY BEING

17   SPENT AND USED.  THEY DID NOT DO IT.  I BELIEVE THAT UNDER THE

18   HOME EQUITY PROTECTION ACT, THERE WAS AN OBLIGATION, GIVEN THE

19   FACT THAT MORTGAGES, AS THEY BECAME AFTER 2000, REALLY CEASED

20   TO BE THE KIND OF FORMAL MORTGAGES WE THOUGHT ABOUT 20 YEARS

21   AGO.  THEY WERE SOLD --

22        **THE COURT:**  WAIT A MINUTE, COUNSEL.  I DON'T DISAGREE

23   WITH THAT, BUT I AM NOT HERE TO CREATE SOME NEW LAW.  THE

24   BOTTOM LINE IS THAT I HAVE TO ABIDE BY THE LAW THAT IS ON THE

25   BOOKS AND THE CASES THAT EXIST.  AND YOU ARE TAKING A

JULY 2, 2008

**EX. A**
**P. 11**

9

1    PARTICULAR STATUTE THAT HAS NO BASIS, REALLY, TO COVER THIS

2    KIND OF CIRCUMSTANCE.

3            NOW, THAT BEING SAID, I AM NOT GOING TO DO YOUR

4    RESEARCH FOR YOU.  THERE IS A PROVISION, IF YOU KNEW WHERE TO

5    LOOK, I GUESS, THAT MIGHT COVER THIS, WHERE THERE IS CASE LAW

6    AND WHERE THERE IS ACTUALITY.  BUT I AM NOT GOING TO BE SITTING

7    HERE AND DOING YOUR WORK FOR YOU.

8            THE BOTTOM LINE IS THAT YOU HAVE NOT SHOWN, UNDER THE

9    REAL ESTATE SETTLEMENT PROCEDURES ACT OR THE HOME OWNERSHIP AND

10   EQUITY PROTECTION ACT -- EITHER ONE OF THOSE -- A BASIS FOR THE

11   LAW THAT WOULD COVER THIS FACT SITUATION.

12           LET ME HEAR BRIEFLY FROM COUNSEL.

13           **MR. ABBOTT:**  GOOD MORNING, YOUR HONOR.  I REPRESENT

14   CAL WESTERN RECONVEYANCE CORPORATION, THE TRUSTEE.  I HAVE ONLY

15   LIMITED COMMENTS, BUT ONE THING I WOULD LIKE TO SAY IS TO

16   CORRECT A COMMENT MADE BY PLAINTIFF'S COUNSEL.  SHE STATED

17   EARLIER THAT PLAINTIFF HAD MADE NUMEROUS ATTEMPTS TO CONTACT

18   ALL THE PARTIES THAT ARE NOW NAMED AS DEFENDANTS, FOR

19   INFORMATION.  I CAN ONLY SPEAK WITH RESPECT TO CAL WESTERN THAT

20   OUR FIRM ACTUALLY RESPONDED TO PLAINTIFF ON TWO OCCASIONS.

21           ACTUALLY, PLAINTIFF'S COUNSEL WAS KIND ENOUGH TO SHOW

22   ME A COPY OF THE LETTER, JUST BEFORE THIS HEARING BEGAN, WHICH

23   DID TRY TO LAY OUT AND ADDRESS THESE QUESTIONS.  I DON'T KNOW

24   IF IT ADEQUATELY DID SO, BUT WE CERTAINLY DID TRY AND EXPLAIN

25   THE BASIS FOR WHICH HE OWED THE ENCUMBRANCES ON HIS PROPERTY

JULY 2, 2008

10

1    AND HOW THE MORTGAGE WORKED.  THAT IS ONE COMMENT I WANT TO

2    MAKE.

3            THE OTHER IS THE ALLEGATIONS IN THE COMPLAINT, AS I

4    READ IT, DID NOT REALLY APPLY TO A TRUSTEE WHO COMES IN AT A

5    PRETTY LATE STAGE AND HAS NOTHING TO DO WITH THE ORIGINATION,

6    THE SERVICING, ANYTHING LIKE THAT, OF THE LOAN.  THE TRUSTEE IS

7    OFTEN NOT EVEN AWARE THAT THEY ARE APPOINTED UNTIL A MUCH LATER

8    DATE.

9            IN THIS CASE, CAL WESTERN RECONVEYANCE CORPORATION

10   ONLY DOES TRUSTEE SERVICES.  AND IN THIS TRANSACTION, ONLY IS

11   INVOLVED WITH RESPECT TO BEING A TRUSTEE.  AND ONCE A REQUEST

12   WAS MADE BY THE BENEFICIARY TO FORECLOSE, THEY WENT AND THEY

13   STARTED TO FILE THE NECESSARY NOTICES -- THE NOTICE OF DEFAULT

14   AND NOTICE OF SALE, ETC.

15           SO MY COMMENTS ARE SORT OF LIMITED BECAUSE OF THAT.

16   I JUST DON'T SEE THIS APPLYING TO MY CLIENT, AND I HAVE ALREADY

17   SPOKEN WITH OPPOSING COUNSEL ABOUT PERHAPS STIPULATING TO AN

18   ACKNOWLEDGMENT THAT CAL WESTERN HAS NO MONETARY INTEREST IN

19   THIS TRANSACTION.  SOMETHING ALONG THE LINE OF A 2924 ALLEN

20   STATE COURT, IF YOU WILL.  JUST SO THAT IT WOULD HELP PLAINTIFF

21   TO NARROW DOWN WHO THEY REALLY ARE INTERESTED IN AND WHO THEY

22   HAVE A BEEF WITH, SO TO SPEAK, AND SORT OF MAKE IT SIMPLER AND

23   LOWER COST FOR EVERYONE INVOLVED.

24           **THE COURT:**  ALL RIGHT.  LET ME ASK YOU, COUNSEL, HAS

25   THERE BEEN ANY ATTEMPT TO TRY TO RESOLVE THIS MATTER IN SOME

JULY 2, 2008

11

1  FORM OF A REFINANCE OR EVEN ANY KIND OF DISCUSSION, OR IS THIS

2  WAY BEYOND THAT?  LET ME TALK TO COUNSEL HERE.

3       **MR. ABBOTT:**  LET ME BEGIN BY SAYING THAT CAL WESTERN

4  HAS NEITHER THE AUTHORITY OR -- IN THE ORDINARY COURSE OF ITS

5  BUSINESS, DOESN'T REALLY ENTERTAIN A REQUEST FOR REFINANCING.

6  THINGS LIKE THAT.  THEY WOULDN'T BE ABLE TO APPROVE IT.  THEY

7  CAN ONLY PASS ON THE REQUEST, AT BEST.  AND THAT KIND OF

8  INFORMATION DOESN'T TYPICALLY REACH THE FILE WHEN MY EYES SEE

9  IT.  SO I DON'T HAVE FIRSTHAND KNOWLEDGE OF ANYTHING IN THAT

10  RESPECT.

11       BUT I KNOW THAT PLAINTIFF HAD RAISED CONCERNS AND

12  HAD -- WROTE A COUPLE OF LETTERS THAT WE WERE AWARE OF THAT

13  APPEAR IN OUR FILES, SAYING, YOU KNOW, PLEASE EXPLAIN MY LOAN,

14  HOW THIS DEBT IS WORKING.

15       AND I KNOW THAT OUR FIRM DRAFTED AT LEAST ONE -- TWO

16  LETTERS, I BELIEVE, TRYING TO ADDRESS HIS CONCERNS, AND THAT

17  WAS JUST IN THE LAST MONTH.  SO I REALLY HAVE A LIMITED VIEW

18  WITH RESPECT TO THE REFINANCING ISSUE BECAUSE --

19       **THE COURT:**  YOU ARE REALLY KIND OF, AS YOU SAY, THE

20  TRUSTEE?

21       **MR. ABBOTT:**  THAT IS CORRECT.

22       **THE COURT:**  AND YOU ARE REALLY OUT OF THE LOOP TO BE

23  ABLE TO RESOLVE ANYTHING?

24       **MR. ABBOTT:**  THAT IS CORRECT, SIR.

25       **THE COURT:**  ALL RIGHT.  WELL, THE PROBLEM I HAVE,

JULY 2, 2008

12

1   MS. TURNER -- YOU CAN SIT DOWN.  THE PROBLEM I HAVE,

2   MS. TURNER, IS THE FACT THAT THE TRO ITSELF DOESN'T REALLY

3   ALLEGE A CAUSE OF ACTION FOR A TRO FROM THE STANDPOINT OF ONE

4   OF THE ELEMENTS THAT HAS TO BE MET, AND THAT IS THE LIKELIHOOD

5   OF SUCCESS ON THE MERITS.  BUT, MORE PARTICULARLY, THE SERIOUS

6   QUESTIONS OF LAW BASED ON THE PAPERS THAT WERE FILED.

7            AND I GUESS THE POINT I AM TRYING TO MAKE IS THAT I

8   CANNOT GRANT A TRO BASED ON THE PAPERWORK THAT YOU HAVE

9   PROVIDED.  WHAT I AM GOING TO DO IS I AM GOING TO DENY IT

10  WITHOUT PREJUDICE.  AND I DON'T KNOW WHAT KIND OF TIME FRAME

11  YOU HAVE, BUT YOU NEED TO GO BACK AND YOU NEED TO ALLEGE A

12  CAUSE FOR A TRO THAT MIGHT HAVE A BASIS FOR A LIKELIHOOD OF

13  SUCCESS.

14           AND I THINK WHAT YOU NEED TO LOOK OVER IS IN THE

15  RESPA AREA, BUT CERTAINLY NOT THE PARTICULAR PROVISION YOU HAVE

16  ALLEGED IN YOUR COMPLAINT.  THERE ARE OTHER PROVISIONS.

17           **MS. TURNER:**  IF I MAY, YOUR HONOR, I BELIEVE THE

18  COURT HAS THE EQUITABLE JURISDICTION TO PUT IN PLACE A TEN-DAY

19  TRO, AT WHICH POINT THE COURT CAN ORDER ME -- AND I WILL FILE

20  NEW PAPERS.  THE FORECLOSURE SALE FOR MY CLIENT'S HOUSE IS

21  TOMORROW MORNING.

22           **THE COURT:**  WELL, I HAVE TO HAVE SOMETHING TO BASE IT

23  ON.  AND I HAVE TO BE ABLE TO LOOK TO THE PAPERWORK.  AND FOR

24  ONE THING, THE RESPA PORTION THAT YOU HAVE ALLEGED IN YOUR

25  COMPLAINT, YOU HAVE NOT ALLEGED IT IN YOUR TRO.  THE RESPA

JULY 2, 2008

13

1    PORTION THAT YOU HAVE IN YOUR COMPLAINT IS THE WRONG RESPA

2    PROVISION, IN ANY CASE.  THERE ARE OTHER PROVISIONS THAT WOULD

3    TEND TO COMPORT WITH YOUR TRO ALLEGATIONS OF WRONGDOING, OR AT

4    LEAST ALLEGATIONS OF ISSUES -- FAILURE TO GIVE NOTICE AND ALL

5    OF THE OTHER FACTORS THAT YOU HAVE LAID OUT.  BUT I CAN'T SIT

6    HERE AND TELL YOU THE LAW, AND I AM NOT GOING TO DO THAT.

7          AND THE SECOND THING IS THAT SOMETIMES IF YOU PROVIDE

8    THE PROPER NOTICE AND GET ALL THE PARTIES HERE, I HAVE THE

9    ABILITY TO POSSIBLY TALK TO THEM AND SEE WHETHER OR NOT,

10   VOLUNTARILY, THEY WOULD PUT SOMETHING OVER WITH THE IDEA OF

11   TRYING TO WORK SOMETHING OUT.  SOMETIMES WHEN THE FEDERAL COURT

12   GETS INVOLVED, THERE IS A TENDENCY TO DO THAT.  BUT THE PROPER

13   SERVICE WASN'T GIVEN TO THE OTHER PEOPLE, AND SO THEY ARE NOT

14   HERE AND I CAN'T DO THAT.

15         I AM NOT GOING TO ISSUE A TRO ON A BLANK SLATE.  YOU

16   CAN DO IT IN A, I GUESS, BIFURCATED MANNER, BUT I WANT YOU TO

17   AT LEAST ALLEGE SOMETHING THAT I CAN HANG MY HAT ON AND GIVE

18   THE NOTICE.  WE'LL BE HERE TODAY, AND I CAN SHORTEN TIME, BUT

19   THE BOTTOM LINE IS I NEED TO HAVE A BASIS FOR THIS.  AND IN THE

20   MEANTIME, I WOULD SUGGEST YOU SEE IF YOU CAN'T GET THEM

21   VOLUNTARILY TO PUT THIS THING OVER, OR GET THEM IN THE COURT

22   SOMEHOW THROUGH THE PROPER NOTICE AND THEN I WILL DEAL WITH IT.

23         BUT I CAN'T DEAL WITH IT UNLESS I HAVE A BASIS.

24   MAYBE EQUITABLE RELIEF, YES, I DO HAVE THAT.  BUT I CAN'T DO MY

25   OWN RESEARCH AND SAY OH, I CAN LOOK IT UP, THIS IS WHAT I

JULY 2, 2008

14

1  SHOULD DO.  I HAVE TO HAVE SOMETHING THAT I CAN LOOK TO ON A

2  PIECE OF PAPER, AND I DON'T HAVE IT.

3          I AM GOING TO DENY IT WITHOUT PREJUDICE AND LET YOU

4  GO BACK AND SEE IF YOU CAN GET SOMETHING TOGETHER, AND THEN

5  WE'LL SEE WHERE WE GO.

6          **MS. TURNER:**  THANK YOU, YOUR HONOR.

7          **MR. ABBOTT:**  THANK YOU, YOUR HONOR.

8          **THE COURT:**  ALSO, I THINK YOU OUGHT TO TALK TO

9  COUNSEL.

10         **MS. TURNER:**  I AM GOING TO.

11         **THE COURT:**  IT DOESN'T SEEM TO ME THAT IT SERVES ANY

12  PURPOSE TO HAVE HIM AROUND.

13         **MR. ABBOTT:**  THANKS, YOUR HONOR.

14  (RECESS AT 10:31 A.M.)

15

16

17

18

19

20

21

22

23

24

25

JULY 2, 2008

15

1    **SAN DIEGO, CALIFORNIA; WEDNESDAY, JULY 2, 2008; 4:03 P.M.**

2    (MR. CONNORS APPEARING TELEPHONICALLY)

3             **THE COURT:**  GOOD AFTERNOON.

4             **MR. ABBOTT:**  GOOD AFTERNOON.

5             **THE COURT:**  DO WE HAVE MR. CONNORS ON THE LINE?

6             **MR. CONNORS:**  PRESENT, YOUR HONOR.

7             **THE COURT:**  VERY GOOD.

8             I HAVE RECEIVED AN AMENDED -- OR A SECOND, I SHOULD

9    SAY, TEMPORARY RETRAINING ORDER.  AND THE SECTION THAT IS

10   APPLICABLE HAS BEEN ALLEGED.  THERE ARE SOME OTHER ISSUES.  I

11   AM GOING TO TRY TO WALK THROUGH THIS.

12            FIRST, THE TRO IS ONLY AGAINST CAL WESTERN AND

13   COUNSEL IS HERE.  LET ME ASK, IS CAL WESTERN RESPONSIBLE FOR

14   THE SALE?

15            **MR. ABBOTT:**  WHEN YOU SAY RESPONSIBLE --

16            **THE COURT:**  I GUESS I SHOULD SAY WHO IS IT THAT IS

17   ACTUALLY EFFECTING THE ALLEGED SALE?

18            **MR. ABBOTT:**  THAT WOULD BE CAL WESTERN.  THEY ARE THE

19   ONES WHO ARE THE TRUSTEES.  SO THEY ARE THE ONES WHO ARE

20   ENTRUSTED WITH THAT.

21            **THE COURT:**  SO A TRO AGAINST CAL WESTERN WOULD

22   PRECLUDE THE SALE AND IT WOULD NOT REQUIRE ANY OTHER OF THESE

23   DEFENDANTS FOR AT LEAST THE TRO; IS THAT CORRECT, IF IT WERE

24   ISSUED?

25            **MR. ABBOTT:**  I WOULD SAY THAT SOUNDS CORRECT TO ME,

JULY 2, 2008

16

1  BUT WITH THE PROVISO THAT I HAVEN'T RESEARCHED THE ISSUE.  I

2  JUST WANT TO SAY THAT I CAN'T SAY WITH 100 PERCENT CERTAINTY

3  THAT THAT WOULD DO THE TRICK, SO TO SPEAK.  BUT THAT DOES SOUND

4  TO BE IN ACCORD WITH MY UNDERSTANDING OF THE FACTS AND ISSUES

5  PRESENT.

6          **THE COURT:**  ALL RIGHT.  NOW, A TRO, OF COURSE, WOULD

7  HAVE TO -- THERE WOULD HAVE TO, OBVIOUSLY, BE NOTICE, HOWEVER,

8  TO EVERYBODY.  SO YOU ARE PREPARED, IF THIS IS ISSUED, TO GIVE

9  NOTICE TO ALL OF THE PARTIES, RIGHT?

10          **MS. TURNER:**  I AM, YOUR HONOR.

11          **THE COURT:**  AND WHEN I SAY GIVE NOTICE, THE IDEA

12  WOULD HAVE TO BE THAT THERE WOULD BE A PRELIMINARY INJUNCTION

13  TIME FRAME WITHIN TEN DAYS.  THAT USUALLY GETS PUT OVER AFTER

14  EVERYBODY DECIDES THAT THEY DON'T WANT TO DO IT THAT QUICKLY.

15  BUT IN ANY CASE, I HAVE SOME DATES.  THE BOTTOM LINE IS THAT

16  YOU WOULD NEED TO GIVE NOTICE.  AND I WOULD EXPECT THAT A

17  NOTICE OF THIS TYPE, THAT YOU WOULD DO MORE THAN JUST FILE IT

18  WITH THE CLERK.  YOU NEED TO ACTUALLY PERSONALLY SERVE -- YOU

19  NEED TO PERSONALLY SERVE EVERYBODY.

20          AND MY SUGGESTION IS THAT YOU DO MORE THAN JUST HAVE

21  A PROCESS SERVER.  THAT YOU GET ON THE LINE, YOU FIND OUT WHO

22  THE LAWYER IS, YOU INFORM THE LAWYER VERBALLY, AND YOU STAY

23  AHEAD OF THE CURVE SO THAT EVERYBODY GETS NOTICE AND IS PUT ON

24  NOTICE THAT THEY WILL BE GETTING A DOCUMENT, IN ANY CASE.  SO

25  THEY ARE WELL AWARE THAT THIS IS COMING.

JULY 2, 2008

17

1        YOU NEVER KNOW.  PROCESS SERVERS MAY GET THE WRONG

2   PERSON INITIALLY.  AND YOU CAN GET THIS THROUGH GOOGLE.  YOU

3   CAN GET IT THROUGH A VARIETY OF OTHER WAYS, BUT YOU NEED TO

4   GIVE NOTICE IN THAT MANNER.

5        **MS. TURNER:**  I AM PREPARED, YOUR HONOR, FIRST THING

6   TOMORROW MORNING, TO COMMENCE PHONE CALLS.  I WILL SEND THE

7   DOCUMENTS BY DHL.  IF THEY HAVE A LOCAL REPRESENTATIVE, I WILL

8   HAVE A PROCESS SERVER ON THEIR DOORSTEP MONDAY MORNING.

9        **THE COURT:**  NOW, THERE IS STILL SOME MORE MECHANICAL

10  ASPECTS TO THIS.  YOU DID ALLEGE AN ALLEGATION OF RESPA, 2605,

11  THAT WOULD SEEM TO APPLY IN THIS CASE.  2605B1, AND SO ON.

12        THIS PARTICULAR ALLEGATION IS NOT ALLEGED AT THIS

13  TIME IN THE COMPLAINT, THEREFORE, YOU HAVE TO FILE AN AMENDED

14  COMPLAINT IN ORDER TO RELY ON THIS SECTION.  SO I WILL ALLOW

15  YOU TO MAKE AN ORAL AMENDMENT TO THE COMPLAINT, BUT I WANT YOU

16  TO FILE AN AMENDED COMPLAINT IN CONFORMITY WITH YOUR AMENDMENT,

17  WITHIN 24 HOURS.

18        **MS. TURNER:**  WELL, OF COURSE, I CAN DO IT ON LINE, I

19  SUPPOSE, WITH THE 4TH OF JULY HOLIDAY ON FRIDAY, BUT I AM

20  PREPARED TO GO BACK TO MY OFFICE AND DRAFT --

21        **THE COURT:**  THE BOTTOM LINE IS THAT THIS COURT IS

22  BENDING OVER BACKWARDS.  THERE IS STILL A LOOSE END BEFORE I

23  CAN ISSUE THIS, BUT THE BOTTOM LINE IS THAT --

24        **MS. TURNER:**  I AM PREPARED TO FILE IT.

25        **THE COURT:**  -- TECHNICALLY SPEAKING, AS WE SIT HERE

JULY 2, 2008

18

1    NOW, YOU HAVE AN ALLEGATION IN YOUR TRO WHICH MAY BE APPLICABLE

2    TO THE CIRCUMSTANCES, BUT IT'S NOT IN THE COMPLAINT.

3            **MS. TURNER:**  I AM PREPARED TO FILE AN AMENDED

4    COMPLAINT WITHIN 24 HOURS, YOUR HONOR.

5            **THE COURT:**  THAT WOULD HAVE TO BE DONE.

6            **MS. TURNER:**  AND I AM PREPARED TO ORALLY AMEND THE

7    COMPLAINT TO ALLEGE THE CAUSE OF ACTION UNDER 12 USC 2605B.

8            **THE COURT:**  ALL RIGHT.

9            **MS. TURNER:**  ET SEQ.

10           **MR. ABBOTT:**  YOUR HONOR, IF I MAY, BEFORE YOU ISSUE

11    YOUR RULING, I WOULD APPRECIATE AN OPPORTUNITY TO SPEAK ON THAT

12    PARTICULAR ALLEGATION.

13           **THE COURT:**  ALL RIGHT.  BEFORE THAT TAKES PLACE --

14    AND I WILL ALLOW THIS.

15           **MR. ABBOTT:**  THANK YOU.

16           **THE COURT:**  I WILL ALLOW IT BEFORE I MAKE ANY RULING.

17           THE NEXT PROCEDURAL ASPECT IS THAT IN YOUR

18    PAPERWORK -- WHICH I HAVE -- IN YOUR TRO, IN THE DECLARATION,

19    THERE ARE CERTAIN ASPECTS OF THE DECLARATION THAT TALK ABOUT:

20    I ALWAYS SENT MY LOAN PAYMENTS TO DETERMINE WHO ACTUALLY OWNED

21    WHAT WAS PURPORTED TO BE MY MORTGAGE.  AMERICA'S SERVICING

22    IGNORED AND BLOCKED MY EFFORT TO CONTACT THE NOTE OWNER AT

23    EVERY TURN, BEGAN TO INVESTIGATE MY RIGHTS, INCLUDING MY RIGHTS

24    TO DETERMINE WHO ACTUALLY POSSESSES THE MORTGAGE.

25           NOW, THE PARTICULAR REQUIREMENT, UNDER 2605, REQUIRES

JULY 2, 2008

19

1    THAT THE -- THAT IS, MR. CONNORS WAS NOT NOTIFIED THAT HIS LOAN

2    WAS ASSIGNED, SOLD OR TRANSFERRED.  IT'S NOT SUFFICIENT FOR HIM

3    TO SAY DEFENDANTS DIDN'T RESPOND TO HIS REQUEST.

4            SO I NEED TO FIND OUT FROM YOU, MR. CONNORS, WHETHER

5    OR NOT YOU WERE EVER NOTIFIED OF ALL OF THE ASSIGNMENTS OR

6    TRANSFERS THROUGH THIS PROCESS THAT WAS MADE.  I DON'T KNOW

7    MYSELF.  IT SOUNDS LIKE CREDIT SUISSE OR SOMEONE ENDED UP WITH

8    IT, BUT WERE YOU INFORMED?  BECAUSE I HAVE TO HAVE ON THE

9    RECORD -- THAT IS WHY I NEEDED YOU ON THE LINE HERE.  I NEED A

10   DECLARATION UNDER OATH FROM YOU THAT YOU WERE NOT NOTIFIED THAT

11   YOUR LOAN WAS ASSIGNED, SOLD OR TRANSFERRED; OTHERWISE, THIS

12   SECTION IS NOT APPLICABLE, BUT IT'S THE ONLY APPLICABLE

13   SECTION.

14           **MR. CONNORS:**  YOUR HONOR, I NEVER RECEIVED ANY

15   KNOWLEDGE OF ANY COMPANY NAMED CREDIT SUISSE OR FIRST BOSTON AT

16   ANY TIME DURING THE NORMAL ACTIVITIES OF MY MORTGAGE.  AND I

17   ONLY BECAME AWARE OF THAT NAME WHEN I RECEIVED A NOTICE OF

18   DEFAULT FROM, I BELIEVE, CAL WESTERN.

19           **THE COURT:**  LET ME DO THIS.  I WOULD LIKE TO HAVE YOU

20   PLACED UNDER OATH.  MY CLERK WILL PLACE YOU UNDER OATH, AND

21   THEN I WOULD WANT YOU UNDER OATH TO SAY THIS.

22           **MR. CONNORS:**  YES, SIR.

23           **DEPUTY CLERK:**  I GUESS, PLEASE RAISE YOUR RIGHT HAND.

24           **MR. CONNORS:**  RAISED.

25           **DEPUTY CLERK:**  DO YOU SOLEMNLY SWEAR THAT THE

JULY 2, 2008

EX. A
P. 22

20

1    EVIDENCE YOU SHALL GIVE IN THE CAUSE NOW BEFORE THE COURT SHALL

2    BE THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH?

3              **MR. CONNORS:**  I SO SWEAR.

4              **DEPUTY CLERK:**  THANK YOU.

5         **THE COURT:**  ALL RIGHT.  IF YOU WOULD, AGAIN FOR THE

6    RECORD, STATE WHETHER OR NOT YOU WERE NOTIFIED DURING THE

7    PROCESS OF THE ASSIGNMENT OF YOUR LOANS.

8              **MR. CONNORS:**  AT NO TIME WAS I AWARE OF ANY

9    ASSIGNMENTS.  AT NO TIME WAS I EVER AWARE OF THE NAME OF CREDIT

10   SUISSE OR FIRST BOSTON.  I ONLY BECAME AWARE OF THAT NAME WHEN

11   I BELIEVE I RECEIVED THE NOTICE OF FORECLOSURE FROM CAL

12   WESTERN.  AND THAT IS THE FIRST PLACE I EVER NOTICED THAT NAME

13   OR BECAME -- OR WAS INFORMED OF THAT NAME.

14        **THE COURT:**  AND WHEN DID YOU BECOME INFORMED OF ALL

15   THE OTHER DEFENDANTS' NAMES?

16             **MR. CONNORS:**  I THINK IT WAS ABOUT THE SAME TIME,

17   YOUR HONOR.  I THINK --

18        **THE COURT:**  ABOUT THE SAME TIME AS WHEN?

19             **MR. CONNORS:**  WELL, THE FORECLOSURE NAMED CREDIT

20   SUISSE.  THE FORECLOSURE NAMED FIRST BOSTON.  THE FORECLOSURE

21   NAMED -- I BELIEVE THE ORIGINAL ONE THAT I WAS AWARE OF, AND I

22   CAN'T REMEMBER IF IT WAS EXPANDED CREDIT.  I DON'T HAVE IT IN

23   FRONT OF ME.

24        **THE COURT:**  BUT YOU STATE AT THE TIME THAT YOUR

25   MORTGAGE WAS ASSIGNED, YOU WERE NEVER INFORMED WHO RECEIVED

JULY 2, 2008

21

1   THEM; IS THAT CORRECT?

2          **MR. CONNORS:**  NO, YOUR HONOR, I WAS NOT.

3          **THE COURT:**  ALL RIGHT.

4          ALL RIGHT.  COUNSEL?

5          **MR. ABBOTT:**  THANK YOU, YOUR HONOR.  I WOULD LIKE TO

6   DISCUSS TITLE 12, SECTION 2605 FOR A MINUTE, IF THAT IS ALL

7   RIGHT.

8          **THE COURT:**  YES.

9          **MR. ABBOTT:**  THE ISSUE BEING HERE IS MR. CONNORS HAS

10  STATED UNDER OATH THAT HE NEVER RECEIVED NOTICES IDENTIFYING

11  THE TWO ENTITIES:  CREDIT SUISSE -- AND THERE IS ANOTHER ONE.

12  I APOLOGIZE.  IT'S ON THE TIP OF MY TONGUE.

13         **MS. TURNER:**  FIRST BOSTON.

14         **MR. ABBOTT:**  FIRST BOSTON.  THANK YOU.

15         AND I WANT TO POINT THE COURT'S ATTENTION TO SOME OF

16  THE TEXT IN TITLE 12, SECTION 2605, WHICH I AM SURE THE COURT

17  HAS ALREADY LOOKED AT.  I WANT TO, IF I CAN, EXPLAIN IT FROM A

18  POINT OF VIEW OF -- WELL, OUR UNDERSTANDING OF HOW THIS SHOULD

19  BE INTERPRETED.

20         SUBSECTION A IS INAPPLICABLE BECAUSE IT DEALS WITH

21  DISCLOSURES AT THE LOAN ORIGINATION, WHICH I THINK THE COURT

22  RECOGNIZES BECAUSE THE COURT SAID SECTION B1, I THINK, IS WHERE

23  IT ARISES.  SO I AM SORT OF BEING SOMEWHAT REDUNDANT OF THE

24  COURT'S ALREADY UNDERSTANDING OF THE SECTION.

25         GOING TO SECTION B -- SUBDIVISION B.  AND THIS

JULY 2, 2008

22

1    REGARDS NOTICE BY TRANSFER OR -- TRANSFEROR OF LOAN SERVICING.

2    THIS IS IN THE TITLE.  LOAN SERVICING AT TIME OF TRANSFER.

3            TRANSFEROR OF LOAN SERVICING.  NOTICE REQUIREMENT.

4    EACH SERVICER -- AND THIS, OF COURSE, HAS BEEN READ, BUT I ONLY

5    READ IT FOR AN EMPHASIS -- OF ANY FEDERALLY RELATED MORTGAGE

6    LOAN SHALL NOTIFY THE BORROWER IN WRITING OF ANY ASSIGNMENT,

7    SALE, OR TRANSFER OF THE SERVICING OF THE LOAN.

8            IN MY INTERPRETATION YOU PUT BRACKETS AROUND THE

9    SERVICING OF THE LOAN TO ANY OTHER PERSON.

10           THE REASON I WANTED TO BRING THIS UP TO THE COURT'S

11   ATTENTION IS BECAUSE THE COMPLEXITY OF THE LOAN MARKET FOR

12   RESIDENTIAL REAL ESTATE IS MIND-BOGGLING.  I AM STILL GETTING

13   MY HEAD WRAPPED AROUND IT AND I PRACTICE IT ON A DAILY BASIS,

14   WITH NO OTHER KIND OF PRACTICE ON THE SIDE.

15           SO LOAN SERVICING.  THERE IS THREE FACETS TO THIS

16   KIND OF SITUATION.  THERE IS THE LENDER, WHO IS THE

17   ORGANIZATION THAT, OF COURSE, GIVES THE MONEY THAT ENDS UP

18   BEING -- FUNDS THE PURCHASE OF THE PROPERTY.

19           THERE IS A MIDDLE LAYER WHICH IS THE SERVICING LAYER.

20   AND THIS LAYER IS WHERE COMPANIES ARE HIRED TO RECEIVE PAYMENTS

21   FROM BORROWERS AND APPLY THOSE PAYMENTS TO THEIR ACCOUNTS, TO

22   COMMUNICATE WITH BORROWERS IF THEY ARE LATE, TO CHARGE FEES OR,

23   BASICALLY, CARRY OUT ALL THE FUNCTIONS OF THE DEED OF TRUST OR,

24   WHATEVER, AND WHATEVER DOCUMENTS GOVERN THE LOAN.

25           AND THEN THERE IS THE THIRD ASPECT, WHICH IS THE

JULY 2, 2008

EX. A
P. 25

23

1    TRUSTEE, AND THAT IS MY CLIENT IN THIS CASE, WHICH ONLY COMES

2    INTO PLAY IF THE DEED OF TRUST IS VIOLATED OR CAUSE FOR

3    FORECLOSURE ARISES.

4            2605 DEALS WITH NOTIFICATION TO THE BORROWER WHEN THE

5    LOAN SERVICING AGENT CHANGES.  THE LOAN SERVICING AGENT IS NOT

6    CREDIT SUISSE, IT'S NOT FIRST BOSTON.  THE LOAN SERVICING

7    AGENTS ARE -- AND I CAN PROBABLY IDENTIFY IT FROM THE PARTIES

8    NAMED IN HERE -- AMERICA'S SERVICING COMPANY IN THIS CASE IS

9    THE LOAN SERVICING AGENT.

10            THERE IS NO STATUTORY REQUIREMENT IN THE FEDERAL

11    CODES ANYWHERE THAT YOU WILL FIND THAT MR. CONNORS HAD TO BE

12    NOTIFIED -- AT LEAST AS ALLEGED BY PLAINTIFF -- THAT

13    MR. CONNORS HAD TO BE NOTIFIED WHEN THE UNDERLYING PAPER WAS

14    TRANSFERRED.

15            NOW, OF COURSE, YOU COULD READ *THE NEW YORK TIMES* ON

16    ANY DAY AND READ AN ARTICLE OR TWO ABOUT THIS AND THE TROUBLE

17    IT HAS CAUSED.  BUT NONETHELESS, THIS IS THE CASE AND CONGRESS

18    SEEMED TO RECOGNIZE THE SITUATION ON THE GROUND AND DRAFTED

19    2605 ACCORDINGLY, NARROWLY TO BE APPLIED TO LOAN SERVICING.

20            NOW, AMERICA'S SERVICING COMPANY, IF IT HAD CHANGED,

21    FOR EXAMPLE, AND DURING THE TERM OF THIS LOAN TO DATE IT WENT

22    FROM AMERICA'S SERVICING COMPANY TO, SAY, AURORA LOAN SERVICES,

23    ANOTHER SERVICER THAT IS COMMON IN THE INDUSTRY, MR. CONNORS

24    WOULD HAVE HAD A RIGHT TO RECEIVE NOTICE OF THAT TRANSFER OF

25    THE SERVICER.  AND IF HE DID NOT, THEN A VIOLATION UNDER 2605

JULY 2, 2008

24

1    WOULD HAVE OCCURRED.

2         IF, ON THE OTHER HAND, LENDERS HAD SOLD THE PAPER

3    UNDERNEATH TO OTHER LENDERS AND IT WAS TRANSFERRED IN THAT

4    MARKET, NO NOTICE, AS I UNDERSTAND 2605, IS REQUIRED TO BE MADE

5    TO THE BORROWER, MR. CONNORS.  SO THERE IS NO BASIS FOR A TRO

6    IN THIS CASE BECAUSE EVEN THE AMENDED COMPLAINT 24 HOURS FROM

7    NOW, HOW IT'S GOING TO BE AMENDED, IS NOT GOING TO COVER A

8    VIOLATION OF 2605.

9         NOW, MR. CONNORS HAS NOT -- HE HAS BEEN VERY

10   SPECIFIC.  HE NEVER RECEIVED NOTICE THAT A TRANSFER OCCURRED,

11   AND HE NEVER KNEW WHO U.S. BANK WAS OR CREDIT SUISSE OR FIRST

12   BOSTON.  AND THAT MAY BE TRUE.  AND THAT WOULDN'T SURPRISE ME,

13   NECESSARILY.  IT'S CERTAINLY NOT REQUIRED UNDER 2605.

14        I THINK THE QUESTION THAT NEEDS TO BE POSED TO

15   MR. CONNORS IS HAS HE EVER -- FIRST OF ALL, HAS THE LOAN EVER

16   BEEN -- THE SERVICING OF IT EVER BEEN TRANSFERRED.  I DON'T

17   KNOW THAT IT HAS.

18        AND IF IT HAS, DID HE RECEIVE NOTICE OF THAT.  DID HE

19   RECEIVE A NOTICE, FOR EXAMPLE, THAT AMERICA'S SERVICING COMPANY

20   IS NOT THE ORIGINAL SERVER.  NOW THAT WOULD BE SOMETHING IN MY

21   UNDERSTANDING OF THE STATUTE MAY -- MAY GIVE RISE TO A TRO IN

22   THIS CASE.  NOW, PLAINTIFF'S COUNSEL HAS NOT RAISED ANY FACTS

23   TO SUGGEST THAT, HASN'T EXPLORED THAT ISSUE, AND TO ME HAS NOT

24   REALLY TRIGGERED 2605 AT ALL IN THE SLIGHTEST.

25        **THE COURT:**  ALL RIGHT.  WELL, I WILL ASK MR. CONNORS

JULY 2, 2008

25

1  WHETHER OR NOT THE SERVICING ENTITY HAS EVER CHANGED, FOR THE

2  SAKE OF THE RECORD.  HAS IT, MR. CONNORS?

3        **MR. CONNORS:**  YOUR HONOR, AS THE DEFENDANT WAS MAKING

4  THAT STATEMENT, I WAS TRYING TO SCAN MY MEMORY.  I HAD SEVERAL

5  DIFFERENT LOANS ON DIFFERENT HOUSES OVER THE YEARS, AND THIS

6  MIGHT BE THE SECOND LOAN ON THIS HOUSE.  AND I CAN'T SAY FOR A

7  FACT IF THIS ONE HAS BEEN REASSIGNED OR IF I WAS GIVEN NOTICE

8  ON THIS PARTICULAR ONE.

9        **THE COURT:**  ALL RIGHT.  WELL, HERE IS THE WAY I LOOK

10  AT IT AT THIS POINT.  I DO BELIEVE, AS I SAID EARLIER, THAT

11  THERE IS IRREPARABLE HARM BEING DEMONSTRATED.  THE QUESTION IS

12  THE LIKELIHOOD OF SUCCESS.  AND YOU MAY VERY WELL BE CORRECT IN

13  YOUR ANALYSIS OF THE MEANING OF THIS PARTICULAR STATUTE, BUT

14  THIS IS A TRO THAT I BELIEVE IS CRITICAL FOR AT LEAST TO HAVE

15  THE BRIEFING ON BOTH SIDES.

16        AND, MR. ABBOTT, YOU ARE VERY ARTICULATE TO THIS

17  PARTICULAR STATUTE AND YOU MAY BE RIGHT.  BUT I AM GOING TO

18  ISSUE A TRO, IN ANY CASE, JUST BECAUSE I DO BELIEVE THAT IT'S

19  SUCH SHORT NOTICE.  I REALLY DON'T HAVE TIME TONIGHT TO DO THE

20  RESEARCH, NOR DOES COUNSEL HAVE THE OPPORTUNITY.  AND AT THE

21  TIME OF THE PRELIMINARY INJUNCTION, IT MAY VERY WELL HAVE TO BE

22  VACATED IF YOU ARE CORRECT.

23        AND I AM NOT SAYING YOU ARE OR YOU AREN'T.  IT'S JUST

24  AT THIS LATE DATE I DON'T HAVE THE ABILITY TO REALLY ANALYZE

25  IT.  SO WITH THAT IN MIND, I AM GOING TO ISSUE A TEMPORARY

JULY 2, 2008

26

1   RESTRAINING ORDER.  I HAVE THREE DATES FOR THE PRELIMINARY

2   INJUNCTION THAT ARE AVAILABLE:  TUESDAY THE 15TH, WEDNESDAY THE

3   16TH, AND THURSDAY THE 17TH, IN THE AFTERNOON.

4          IS THAT THURSDAY AFTERNOON?

5          **DEPUTY CLERK:**  17TH, THE AFTERNOON.  THE WHOLE DAY ON

6   THE 15TH OR 16TH.

7          **THE COURT:**  THE WHOLE DAY ON THE 15TH OR 16TH, AND IN

8   THE AFTERNOON ONLY OF THE 17TH.  AND YOU CAN TAKE YOUR PICK.

9   AND THEN ALSO AT SOME POINT, IF YOU WANT, IF YOU DECIDE YOU

10  NEED MORE TIME, THEN I THINK I HAVE NO PROBLEM WITH IT, BUT IT

11  HAS TO BE SET WITHIN TEN DAYS.  AND IF THERE IS NO AGREEMENT OR

12  STIPULATION THAT IT BE PUSHED OUT, WE'LL HAVE IT ON ONE OF

13  THESE DAYS.

14         AT THAT POINT, THEN, IT NEEDS TO BE RESEARCHED AND

15  PROVIDED TO ME IN WRITING AND THEN I WILL MAKE A DECISION THEN.

16         AND I NEED TO FIND OUT -- AND MR. CONNORS NEEDS TO

17  PROVIDE HIS COUNSEL ANY FURTHER INFORMATION NECESSARY THAT

18  MIGHT BE RELEVANT TO 2605.  BUT, AS I SAY, IT'S LATE IN THE

19  AFTERNOON AND THE FORECLOSURE IS TOMORROW.  AND I DO BELIEVE

20  THERE HAS BEEN SUFFICIENT SHOWING UNDER 2605, AT LEAST, TO HOLD

21  OFF UNTIL TEN DAYS.  AND THAT IS WHAT I AM GOING TO DO.

22         **MS. TURNER:**  EITHER THE 15TH OR 16TH ARE FINE WITH

23  ME.  THE 17TH WOULD BE EXTRAORDINARILY DIFFICULT.

24         **THE COURT:**  MR. ABBOTT?

25         **MR. ABBOTT:**  THE 15TH IS THE ONLY ONE OF THOSE THREE

JULY 2, 2008

27

1    DAYS YOU MENTIONED THAT WOULD BE POSSIBLE FOR ME.

2    **THE COURT:** WE'LL SET IT ON THE 15TH AT 10:00. THE

3    BRIEFING NEEDS TO BE PROVIDED BEFORE THEN. IT SHOULD BE

4    IN DEPTH. AND, HOPEFULLY, THERE WILL BE SOME CASE LAW OR OTHER

5    AUTHORITY. AND THE FACTS ALSO NEED TO BE FLUSHED OUT TO

6    DETERMINE WHETHER MR. CONNORS HAS THE FACTS THAT FIT THIS

7    PARTICULAR STATUTE.

8    SO WITH THAT, I DON'T KNOW, DO WE HAVE A TRO COUNSEL

9    NEEDS TO PROVIDE US WITH?

10   **MS. TURNER:** I PROVIDED FORMS THAT CAME IN WITH THE

11   BENCH COPY. THEY ARE THE VERY LAST DOCUMENTS WITH BLANK SPACES

12   FOR THE COURT'S USE.

13   **THE COURT:** MY CLERK SAYS THAT THAT IS NOT ADEQUATE,

14   BUT WE'LL PREPARE IT.

15   **MR. ABBOTT:** YOUR HONOR, SORRY. I DON'T MEAN TO

16   INTERRUPT YOU. COULD YOU SET SOME SORT OF GUIDELINES AS FAR AS

17   PAPERS BEING PREPARED? WE UNDERSTAND WHY THE COURT'S RULING IN

18   GRANTING THIS TRO, BUT I WANT TO PROTECT MY CLIENT'S INTEREST

19   IN NOT HAVING THIS THING DRAG ON.

20   **THE COURT:** SURE. IF WE ARE GOING TO HAVE IT ON THE

21   15TH, WE NEED A FEW DAYS. THE COURT NEEDS A FEW DAYS. WE ARE

22   GOING TO NEED -- WE'LL BACK IT UP SO THAT THE 13TH - IS THAT A

23   SATURDAY?

24   **MR. ABBOTT:** SUNDAY.

25   **THE COURT:** WE BETTER HAVE IT ON THE 11TH. SO BACK

JULY 2, 2008

28

1    UP FROM THE 11TH.  THIS IS THE 1ST.

2            **MS. TURNER:**  ACTUALLY, THIS IS THE 2ND, YOUR HONOR.

3            **THE COURT:**  THE 2ND.  WE'LL START WITH THE PLAINTIFF.

4    IF YOU COULD PROVIDE YOUR PAPERWORK TO US BY -- HOW ABOUT IF

5    YOU COULD PROVIDE IT TO ME BY THE 8TH.  AND THEN THE DEFENSE

6    CAN GET THEIR RESPONSE BY THE 13TH.

7            DOES THAT WORK?

8            **MR. ABBOTT:**  SUNDAY THE 13TH?

9            **THE COURT:**  NO.  IT WOULD BE THE 11TH.  THAT IS NOT

10   ENOUGH TIME FOR YOU.  WHAT IS THE 7TH?

11           **MS. TURNER:**  MONDAY.

12           **THE COURT:**  MONDAY.  ALL RIGHT.  YOU ARE GOING TO BE

13   WORKING THIS WEEKEND.

14           **MS. TURNER:**  HAPPY 4TH OF JULY.

15           **THE COURT:**  YOU CAN PROVIDE IT ON THE 7TH, AND

16   MR. ABBOTT CAN HAVE HIS RESPONSE IN BY THE 13TH.

17           **MR. ABBOTT:**  IS THE 14TH MONDAY?

18           **THE COURT:**  YES.  THE 14TH.

19           **MR. ABBOTT:**  THANK YOU, YOUR HONOR.

20           **THE COURT:**  WE SHOULD BE ALL RIGHT.

21           **MS. TURNER:**  YOUR HONOR, MAY I ASK IS MR. ABBOTT

22   PREPARED TO GIVE HIS CLIENT NOTICE TO STOP THAT SALE TOMORROW?

23           **THE COURT:**  WELL, HE NEEDS AN ORDER.  WE'LL GET THE

24   ORDER TO HIM.

25           WHEN DO WE THINK WE'LL HAVE THAT?

JULY 2, 2008

29

1   **THE LAW CLERK:** BY 5:00.

2   **THE COURT:** WE'LL E-FILE IT BY 5:00.

3   **MR. ABBOTT:** THAT IS FINE. I WILL LET MY CLIENT KNOW

4 WHAT HAS GONE ON IN THIS HEARING. I THINK IT'S SCHEDULED FOR

5 10:00 A.M. TOMORROW.

6   **MS. TURNER:** IT IS.

7   **MR. ABBOTT:** POSTPONEMENTS REGULARLY OCCUR AT THE

8 11TH HOUR.

9   **THE COURT:** YOU ARE ALL USED TO THIS STUFF. I AM

10 AFRAID IT'S GOING TO BE MORE AND MORE OF IT.

11   **MR. ABBOTT:** I CALLED THE TRUSTEE ABOUT A WEEK AGO

12 AND SAID LOOK, WE NEED TO POSTPONE ONE, AND SHE SAID WHAT TIME

13 TODAY IS IT, BECAUSE THAT IS USUALLY WHAT IS GOING ON.

14   I SAID NO, THIS IS TWO DAYS FROM NOW. AND SHE HAD A

15 BIG LAUGH ABOUT IT BECAUSE SHE SAID YOU ARE GIVING ME TWO DAYS

16 NOTICE TO POSTPONE? THAT IS GREAT.

17   SO I THINK IT WILL BE FINE. I DON'T SEE A PROBLEM.

18   **THE COURT:** ALL RIGHT. SO YOU HAVE YOUR WORK CUT OUT

19 FOR YOU.

20   **MR. ABBOTT:** IT'S MY UNDERSTANDING THAT WE ARE

21 BRIEFING THE ISSUE OF 2605.

22   **THE COURT:** 2605.

23   **MR. ABBOTT:** OKAY. SO IS PLAINTIFF AT LIBERTY TO

24 BRING UP NEW ISSUES NOW?

25   **THE COURT:** YES.

JULY 2, 2008

30

1        **MR. ABBOTT:** OKAY.

2        **MS. TURNER:** BECAUSE I AM IN A SITUATION HERE WHERE

3  MR. ABBOTT HAS NOT YET FILED A RESPONSE. AND MY RESPONSE IS

4  DUE ON MONDAY. EFFECTING SERVICE ON -- MR. ABBOTT IS NO

5  PROBLEM. I CAN HAVE THAT SERVED TO HIM DIRECTLY. BUT THE

6  OTHERS, I MAY HAVE TO BE SERVING --

7        **THE COURT:** WELL, THEY NEED TO BE SERVED. I MEAN, I

8  THINK THE BIG THING IS THAT THEY SHOULD JUST RECEIVE NOTICE

9  VERBALLY, IF NOTHING ELSE.

10      **MS. TURNER:** THANK YOU, YOUR HONOR.

11      **THE COURT:** AT LEAST IF THEY KNOW IT'S COMING AND

12  THEY DON'T EXACTLY HAVE IT, THEN IT'S NOT AS CRITICAL THAT YOU

13  GET IT TO THEM IMMEDIATELY IF THEY KNOW IT'S COMING.

14      **MS. TURNER:** THANK YOU, YOUR HONOR.

15      **MR. ABBOTT:** THANK YOU, YOUR HONOR.

16      **THE COURT:** MY CLERK HAS A GOOD POINT. THE OTHER

17  PARTIES, ALSO, ARE GOING TO HAVE TO GET THEIR RESPONSE IN BY

18  THE DATE, SO YOU DO NEED TO PROVIDE THEM.

19      WHAT DAY DID WE SAY THEY HAD?

20      **MR. ABBOTT:** MONDAY THE 14TH.

21      **THE COURT:** MONDAY THE 14TH AS TO ABBOTT. SO

22  EVERYBODY WOULD HAVE TO HAVE IT.

23      **MS. TURNER:** I ASSUME THE BRIEFING SCHEDULE WILL BE

24  CONTAINED IN THE ORDER, SO I WILL SEND EVERYBODY COPIES OF THE

25  ORDER BY WHATEVER MEANS I HAVE TO DO TO GET IT TO THEM.

JULY 2, 2008

31

1          **THE COURT:**  OKAY.  ALL RIGHT.  THANK YOU.

2          **MS. TURNER:**  THANK YOU.

3          **MR. ABBOTT:**  THANK YOU, YOUR HONOR.

4     (PROCEEDINGS CONCLUDED AT 4:30 P.M.)

5                         CERTIFICATION

6          I HEREBY CERTIFY THAT I AM A DULY APPOINTED,
QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
7     STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT
TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE
8     ON JULY 2ND, 2008, THAT SAID TRANSCRIPT IS A TRUE AND CORRECT
TRANSCRIPTION OF MY STENOGRAPHIC NOTES; AND THAT THE FORMAT
9     USED HEREIN COMPLIES WITH THE RULES AND REQUIREMENTS OF THE
UNITED STATES JUDICIAL CONFERENCE.

10

11    DATED:  *8/7, 2008*, AT SAN DIEGO, CALIFORNIA.

12          _____
            JEANNETTE N. HILL, OFFL. RPTR. CSR NO. 11148

13

14

15

16

17

18

19

20

21

22

23

24

25

                         JULY 2, 2008

# EXHIBIT B

Exhbiti B to Marum Decl.XLS

# North County Inland San Diego County Home Sales - June 2008

| Place | Zip Code | Resale | | | | | | | | | |
| | | Single-Family | | | | | Condominiums | | | | |
| | | No. Sold '07 | No. Sold '08 | Median '07 | Median '08 | Percent change | No. Sold '07 | No. Sold '08 | Median '07 | Median '08 | Percent change |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **North County Inland** | | | | | | | | | | | |
| Bonsall | 92003 | 10 | 3 | $1,162,500 | $800,000 | -31.2% | 1 | 0 | $520,000 | n/a | n/a |
| Borrego Spr. | 92004 | 6 | 4 | $400,000 | $203,750 | -49.1% | 3 | 0 | $137,500 | n/a | n/a |
| Escondido S | 92025 | 28 | 27 | $511,000 | $380,000 | -25.6% | 1 | 9 | $313,000 | $165,000 | -47.3% |
| **Escondido N** | **92026** | **48** | **48** | **$472,500** | **$360,000** | **-23.8%** | **11** | **9** | **$313,000** | **$163,000** | **-47.9%** |
| Escondido E | 92027 | 44 | 52 | $473,500 | $277,000 | -41.5% | 3 | 18 | $245,000 | $123,000 | -49.8% |
| Escondido W | 92029 | 23 | 15 | $775,000 | $535,000 | -31.0% | 3 | 0 | $376,000 | n/a | n/a |
| Fallbrook | 92028 | 42 | 37 | $640,000 | $408,750 | -36.1% | 0 | 0 | n/a | n/a | n/a |
| Julian | 92036 | 7 | 1 | $357,500 | $88,500 | -75.2% | 0 | 0 | n/a | n/a | n/a |
| Palomar Mtn | 92060 | 0 | 1 | n/a | n/a | n/a | 0 | 0 | n/a | n/a | n/a |
| Pauma Valley | 92061 | 1 | 4 | $500,000 | $550,000 | 10.0% | 1 | 0 | $450,000 | n/a | n/a |
| Penasquitos | 92129 | 48 | 33 | $664,500 | $599,000 | -9.9% | 13 | 14 | $351,500 | $284,750 | -19.0% |
| Poway | 92064 | 57 | 39 | $735,000 | $550,000 | -25.2% | 11 | 7 | $435,000 | $316,000 | -27.4% |
| Ramona | 92065 | 35 | 37 | $494,000 | $400,000 | -19.0% | 3 | 2 | $273,000 | $256,000 | -6.2% |
| Rancho Bernardo W | 92127 | 40 | 29 | $822,000 | $724,000 | -11.9% | 14 | 20 | $405,000 | $275,000 | -32.1% |
| Rancho Bernardo E | 92128 | 50 | 34 | $636,250 | $584,750 | -8.1% | 50 | 46 | $353,000 | $310,364 | -12.1% |
| Rancho Santa Fe | 92067 | 27 | 10 | $2,312,500 | $2,425,000 | 4.9% | 1 | 0 | n/a | n/a | n/a |
| Rancho Santa Fe post office | 92091 | 3 | 0 | $4,425,000 | n/a | n/a | 3 | 0 | $839,000 | n/a | n/a |
| San Marcos N | 92069 | 32 | 38 | $530,500 | $374,000 | -29.5% | 4 | 5 | $410,000 | $181,500 | -55.7% |
| San Marcos S | 92078 | 35 | 38 | $605,000 | $514,000 | -15.0% | 18 | 28 | $414,500 | $276,000 | -33.4% |
| Santa Ysabel | 92070 | 0 | 0 | n/a | n/a | n/a | 0 | 0 | n/a | n/a | n/a |
| Valley Center | 92082 | 20 | 11 | $587,500 | $575,000 | -2.1% | 0 | 1 | n/a | $165,000 | n/a |
| Vista S | 92081 | 20 | 23 | $510,000 | $410,500 | -19.5% | 5 | 10 | $418,000 | $225,000 | -46.2% |
| Vista W | 92083 | 18 | 20 | $479,000 | $237,500 | -50.4% | 5 | 3 | $303,000 | $129,500 | -57.3% |
| Vista E | 92084 | 27 | 25 | $460,000 | $350,000 | -23.9% | 4 | 2 | n/a | $207,500 | n/a |
| Warner Spr | 92086 | 2 | 1 | $350,000 | $636,000 | 81.7% | 0 | 0 | n/a | n/a | n/a |

North County Inland totals: No. Sold '07 623, '08 530, Median '07 $600,000, '08 $420,000, -30.0% | Condominiums No. Sold '07 149, '08 176, Median '07 $375,500, '08 $256,500, -31.7%

Source: http://www.signonsandiego.com/sdhomes/area_homesales/0608nci.html

1

# EXHIBIT C



America's Servicing Company
7495 New Horizon Way
Frederick, MD 21703
(866) 430-0675

March 1, 2005                                           RE:   New Loan Number: 1205113359
                                                              Old Loan Number: 7404-0048

003650

Richard A. Connors
402 Paseo Del Norte
Escondido CA  92026

Dear Valued Customer:

This letter is being sent to inform you that the servicing of your loan **will transfer** to America's Servicing Company effective March 1, 2005. The transfer of mortgage servicing is a common practice in today's market and does not affect any terms or conditions of your mortgage, other than those provisions related to the servicing of your mortgage. Please refer to the Notice of Assignment for the Real Estate Settlement Procedures Act (RESPA) printed on the reverse side of this letter for more information. America's Servicing Company is committed to providing the quality service you are accustomed to and to ensuring a smooth transition.

Beginning March 1, 2005, please direct payments to America's Servicing Company. America's Servicing Company will send you a billing statement each month after your payment is received. If you wish to make a payment greater than the amount due, please indicate how you wish to have the additional funds applied.

All payments and correspondence regarding your loan should be addressed as indicated below:
**PAYMENT:**                                           **CORRESPONDENCE:**
America's Servicing Company                            America's Servicing Company
P.O. Box 37297                                         P.O. Box 10328
Baltimore, MD 21297-3297                               Des Moines, IA 50306-0328

Please include your old loan number, or America's Servicing Company loan number on all inquiries to assure prompt response to your needs during this period. When you send in a check to make your payment, America's Servicing Company may clear the check electronically. Receipt of your check at the address listed on your payment coupon will authorize us to process your payment as an electronic debit to the checking account on which the check was written. If your mortgage check does not clear and is returned, we may withdraw funds from your account electronically. Normally, if this occurs your check will not be returned to you with your bank statement but you can obtain a copy by other means.

This may be a good time to consider the convenience of our Automatic Mortgage Payment (AMP106) program and begin deducting your mortgage payment from your checking or savings account. If interested, please call America's Servicing Company Customer Service at 866-430-0675 and reference AMP106 to enroll over the phone. You may also return the enclosed application to the correspondence address referenced above.

If you currently have credit life or other optional insurance, it will not transfer to America's Servicing Company.

No later than January 31st of next year, America's Servicing Company will provide you with a statement reflecting the amount of mortgage interest paid by you to America's Servicing Company.

The goal of America's Servicing Company is to continue to meet your expectations of service. If you have any questions regarding this transfer please call America's Servicing Company Customer Service toll free at 866-430-0675, Monday through Friday 9:00 a.m. to 6:00 p.m. Eastern Standard Time. If you have any questions relating to your loan activity prior to the transfer of servicing, please call your previous servicer below:

Previous Servicer: Home Loan Corporation
Toll Free Phone Number: 1-800-933-1398
Hours of Operation: 8:30 a.m. to 5:30 p.m. CST, Monday through Friday

Sincerely,

Sandra K. Bondarenko
Assistant Vice President
America's Servicing Company

WF42416/CA

EX. C
P. 36

## NOTICE OF ASSIGNMENT, SALE OR TRANSFER
## OF SERVICING RIGHTS

Except in limited circumstances, section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C Section 2605) requires that your present servicer send you notice of the assignment, sale, or transfer of the servicing rights to your mortgage loan (i.e., the right to collect payments from you) at least 15 days before the effective date of transfer or at closing. Your new servicer must also send you this notice no later than 15 days after the effective date or at closing.

You should also be aware of the following information, which is set out in more detail in Section 6 of RESPA (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request.

Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60 Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such a period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

1
<u>PROOF OF SERVICE</u>

2
<u>STATE OF CALIFORNIA, COUNTY OF SAN DIEGO</u>

3
        I am employed in the County of San Diego; I am over the age of eighteen
years and not a party to the within entitled action; my business address is 501 West
4
Broadway, 19th Floor, San Diego, California 92101-3598.

5
        On **August 20, 2008**, I served the following document(s) described as

6
**AMERICA'S SERVICING COMPANY'S AND U.S. BANK, N.A.'S OPPOSITION
TO RICHARD A. CONNORS' MOTION FOR ISSUANCE OF PRELIMINARY
7
INJUNCTION**

8
**DECLARATION OF J. BARRETT MARUM IN SUPPORT OF AMERICA'S
SERVICING COMPANY AND U.S. BANK, N.A. AS TRUSTEE FOR CREDIT
9
SUISSE FIRST BOSTON HEAT-2005-2'S OPPOSITION TO PLAINTIFF'S
MOTION FOR ISSUANCE OF PRELIMINARY INJUNCTION**

10

11
        on the interested party(ies) in this action addressed as follows:
12

13
                        **<u>Electronic Mail Notice List</u>**
14

**The following are those who are currently on the Court's list to receive e-mail notices
15
for this case.**

| 16 Thomas N Abbott | Attorney for Defendant |
|---|---|
| Pite Duncan LLP<br>17 P. O. Box 12289<br>El Cajon, CA 92022-2289<br>18 619.326.2459<br>Fax: 619.326.2430<br>19 tabbott@piteduncan.com<br>20 | Cal Western Reconveyance Corp. |
| 21 Janis L Turner | Attorney for Plaintiff |
| Law Offices of Janis L. Turner<br>22 2515 Camino del Rio South<br>Suite 242B<br>23 San Diego, CA 92108-3737<br>24 619.718.4800<br>Fax: 619.718.4815<br>25 jlt@janturnerlaw.com<br>26<br>27 | Richard A. Connors |

28

1  **Also served on the interested party(ies) in this action as follows:**

2

3

4

5  ☐ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at San Diego, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

6

7

8  ☐ **BY OVERNIGHT DELIVERY:** I served such envelope or package to be delivered on the same day to an authorized courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier.

9

10

11  ☐ **BY FACSIMILE:** I served said document(s) to be transmitted by facsimile pursuant to Rule 2.306 of the California Rules of Court. The telephone number of the sending facsimile machine was 619-234-3815. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The sending facsimile machine (or the machine used to forward the facsimile) issued a transmission report confirming that the transmission was complete and without error. Pursuant to Rule 2.306(g)(4), a copy of that report is attached to this declaration.

12

13

14

15  ☐ **BY HAND DELIVERY:** I caused such envelope(s) to be delivered by hand to the office of the addressee(s).

16

17  ☐ **STATE:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

18  ☒ **FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

19

20

Executed on **August 20, 2008**, at San Diego, California.

21

22

23  Michele McConnell

24

25

26

27

28

W02-WEST:8JBM1\400977432.1                              -2-